DESHA *v.* INDEPENDENCE COUNTY BRIDGE DISTRICT No. 1.

Opinion delivered February 13, 1928.

1.  VENUE—DENIAL OF CHANGE DISCRETIONARY WHEN.—Denial of a motion for change of venue in a suit to condemn a bridge site was not an abuse of discretion, though two-thirds of the county were interested.

2.  VENUE—DISCRETION OF COURT TO GRANT CHANGE OF VENUE.—The grant or denial of a change of venue, under Crawford & Moses' Dig., §§ 10339, 10341, rests in the discretion of the trial court.

3.  EMINENT DOMAIN—FAIR MARKET VALUE OF LAND.—In determining the value of lands appropriated for public uses, the same considerations are to be regarded as in sales between private persons, the inquiry being in such cases what, from their availability for valuable uses, are they worth in the market?

4.  EVIDENCE—VALUE OF LAND CONDEMNED FOR BRIDGE SITE.—Where land at or near a ferry site was being condemned for a bridge site, testimony as to the worth of the land in view of its suitability for a bridge or ferry site, *held* admissible.

5. EVIDENCE—OPINIONS OF WITNESSES AS TO VALUE OF LAND.—An improvement district condemning land near a ferry for bridge purposes may cross-examine the landowner's witnesses as to the elements considered by them, in forming their opinion as to the value of the land, and all other circumstances that affect their credibility or tend to show their knowledge as to such value.

6. EMINENT DOMAIN—VALUE OF LAND—COMPETENCY OF EVIDENCE.—Any testimony tending to show the market value of land sought to be condemned is competent to show its value.

7. EMINENT DOMAIN—MARKET VALUE—INCOME FROM FERRY.—Testimony as to the revenue or income from a ferry *held* incompetent in a suit to condemn land near the ferry site for bridge purposes.

8. EVIDENCE—JUDICIAL NOTICE.—It is a matter of common knowledge that the existence of a free bridge near a ferry site will destroy the value of land for the purpose of a ferry site.

Appeal from Independence Circuit Court; *S. H. Mann,* Special Judge; reversed.

*Cole & Poindexter, Culbert L. Pearce, Charles W. Mehaffy* and *John E. Miller,* for appellant.

*Ernest Neill* and *S. M. Casey,* for appellee.

MEHAFFY, J. The appellee, plaintiff below, brought suit in the Independence Circuit Court, alleging that it was an improvement district created by act of the General Assembly for the purpose of constructing and maintaining a bridge across White River, at or near the present location of the ferry owned by the appellant, who was the defendant below. It alleged that it had a right to acquire all necessary land for the purpose of building approaches and embankments, as well as such land as may be necessary to connect the bridge with the public highway. That, in carrying out the purposes of its creation, it was necessary that it acquire title to certain lands belonging to the appellant. It then described the land desired, and asked the court to fix the damages that might be sustained by appellant, and to condemn said land.

An order was made by the judge in vacation, ordering appellees to deposit $3,000 with the Union Bank & Trust Company of Batesville, and this sum was deposited.

The appellant filed answer, admitting the creation of the district and admitting that they had been unable to agree upon the amount of damages. He alleged that he was the owner of the land on both sides of the river where appellant proposed to build the bridge; that he and those under whom he held title had owned the land for more than 100 years; that he was the owner of a licensed public ferry known as Ramsey's Ferry, located within a few feet of the proposed bridge site, which had been so located, owned, used and operated by him and his grantors and their ancestors continuously for more than one hundred years; that they have continuously paid all taxes on said land and license on said ferry as required by law during the entire time of their ownership. That he owned all the land fronting on the bank of the river in fee simple, at the south landing of said ferry, for more than a mile up and down stream and extending back for more than one mile, and also owned the land fronting on the bank of the river at the north end of said ferry for more than one-fourth mile up and down stream and extending far enough back to embrace about seventy acres. That, in order to obtain a ferry license, the licensee must be the owner or lessee of the lands on both banks of the stream. That taking the land as proposed by plaintiff would wholly destroy the approaches to said ferry, render it useless, and thereby destroy the defendant's franchise to operate the same. That the right and privilege to operate a ferry, and the ability and opportunity to operate the same, are wholly dependent upon ownership and possession of the lands on the banks of the stream where the same is to be operated, and, for this reason, the right to establish, operate and run a ferry is a valuable right belonging and appertaining to the land, and makes the land more valuable. That the ferry right and privilege in controversy in this case is especially and peculiarly valuable by reason of the fact that the ferry is established and located on a State highway between important cities, and enjoys a large tourist patronage from both directions, and the value of defend-

ant's lands is enhanced and increased by the net income derived from the ferry and by reason of its availability for such rights and uses. That the right and use comes to the defendant by reason of his ownership of the land, and yields him a net income of $4,500 a year; and, by taking said land of the defendant for use and construction of a free bridge at the approaches of the ferry, the plaintiff destroys the ferry and deprives the defendant of a net income of at least $4,500 a year in perpetuity. That the lands proposed to be taken are advantageously located, peculiarly suited and highly valuable as a ferry site. That, on account of the nature and character of the lands, its location and peculiar fitness as a ferry site, and other elements contributing to and making up its true value, if condemned and taken for a free bridge site, as sought by the plaintiff, the defendant will be damaged not less than $60,000. He asked that he be awarded the sum of $60,000 as damages.

The appellee filed an amendment, asking to condemn an additional two-tenths of an acre, and deposited $40 with the same bank for this additional land.

The defendant filed a motion for a change of venue, alleging that he could not obtain a fair and impartial trial in Independence County and Stone County, on account of undue influence of plaintiff and on account of undue prejudice agaist his defense. He set up that the improvement district was composed of all lands south and a portion north of White River, in Independence County, including the city of Batesville; that most of the advocates of a bridge across White River at Batesville are property owners in Independence County, and some in Stone County; that many who favor building the bridge, including the commissioners of the district, are publicly opposing the defendant's claim for damages because, if he prevails, the cost of the improvement will be increased and borne by the property owners of the district, most of whom are eligible for jury service in Independence County, and some in Stone County; that many of the property owners and newspapers in the district, as well

as the county officials, have publicly expressed opposition
to the claims and demands of the defendant, all of which
tends to defeat a fair and impartial trial of the cause
before a jury in Independence or Stone County. He
asked that a change of venue be granted, and that the
cause be transferred to Jackson County for trial.

The motion for change of venue was in proper form,
and properly verified, and supported by the affidavits of
quite a number of witnesses.

The court overruled the motion for change of venue,
and the defendant objected and saved his exceptions.

The plaintiff then filed another amendment to its
complaint, in which it stated that it did not intend to,
and would not, interfere with the operation of the ferry
owned by the defendant, but it expressly conceded,
granted and reserved to the defendant the right to oper-
ate the ferry and the right of ingress and egress on said
lands, so far as the same may be necessary for the opera-
tion of his ferry, and agreed that the decree and judg-
ment of this court which may hereafter be rendered may
contain such reservations and exceptions as will protect
the defendant fully in his rights to operate the ferry.

The case was tried, and the court directed the jury
to return a verdict in favor of the defendant for $3,040,
which was accordingly done. Judgment was entered
accordingly, proper objections and exceptions were made,
and the defendant filed motion for a new trial, which
was overruled on the same day, and the appellant saved
his exceptions, and prayed and was granted an appeal
to the Supreme Court.

Appellant's first contention is that the court erred
in refusing to grant a change of venue.

Section 10339 of Crawford & Moses' Digest provides
that any party to a civil action trial by a jury may
obtain an order for a change of venue therein by motion,
etc.

Mr. Justice HUMPHREYS and the writer believe that
the change of venue should have been granted. That, to
deny a change of venue where two-thirds of the county

are interested as they are in this case, practically abrogates the statute. A majority of the court, however, is of opinion that, under § 10341 of Crawford & Moses' Digest, the court had a right to deny the motion to change the venue, and that his refusal to grant said motion was not error. The section reads as follows:

"Hereafter the venue of civil actions shall not be changed unless the court or judge, to whom the application for change of venue is made, finds that the same is necessary to obtain a fair and impartial trial of the cause." See also *Louisiana & N. W. Ry. Co.* v. *Smith,* 74 Ark. 172, 85 S. W. 242.

The question has been passed on a number of times by this court, and all of the decisions are to the effect that the granting or denying of a motion for change of venue is in the discretion of the trial court.

The next contention of appellant is that the court erred in directing a verdict for $3,040. Appellant concedes that this is the value of the land, considered solely for agricultural purposes. The undisputed proof in this case is that appellant owns the land on both sides of the river where the bridge is to be built.

Appellant offered to prove the fair market value of the land, and offered to prove by a number of witnesses that the value was $50,000, but the witnesses would testify that, in estimating and fixing the damages, they arrive at the amount by fixing the value of the ferry rights, privileges and franchises attached to the land. The court did not permit appellant to make this proof.

Appellant also offered to prove the income or receipts, or revenue, derived from operating the ferry, and this testimony was also excluded.

This court has said: "In determining the value of lands appropriated for public use, the same considerations are to be regarded as in sales of private parties, the inquiry being, in such case, what, from their availability for valuable uses, are they worth in the market?" *Little Rock & Fort Smith Ry. Co.* v. *McGehee,* 41 Ark. 202.

This statement of the inquiry to be made in such cases has been followed and approved by this court in subsequent cases. And the only question here is whether the testimony offered and excluded was competent testimony to prove the fair market value from the availability for valuable uses of this land. In other words, what was the fair market value of this land for any purposes for which it could be used?—for ferry purposes or bridge purposes?—the purpose of the suit being to condemn it and take it for a bridge site. Then, certainly, testimony as to the value of the land for a bridge site would be competent, and the only way in which the market value could be shown.

In the case of *St. Louis, I. M. & So. Ry. Co.* v. *Theo Maxfield Co.,* 94 Ark. 135, 126 S. W. 83, 26 L. R. A. (N. S.) 1111, the court said:

"The measure of damages which the owner is entitled to recover for property taken for public use or depreciated by such use is the market value of it. This market value is determined, not solely by the uses to which the property has been put or is put at the time of the condemnation proceeding, but by all the purposes to which it is adapted. It may not be used at the time for any purpose that is profitable, but the use to which it may reasonably and probably be put profitably must necessarily be taken into consideration in determining the market value of the land."

How could its use as a bridge site or a ferry site be taken into consideration in determining its value except to prove its value, as the appellant offered to do, by showing its value as a bridge site or a ferry site? In other words, showing its value with the ferry or bridge rights or privileges.

This court said in a much more recent case: "The measure of the owner's compensation for the land condemned is the market value thereof at the time of the taking, for all purposes, comprehending its availability for any use to which it is plainly adapted, as well as the most valuable purpose for which it can be used and will

bring most in the market." *Fort Smith & Van Buren Bridge District* v. *Scott*, 103 Ark. 405, 147 S. W. 440.

This is exactly what the appellant offered to prove. The witnesses were probably not experts, and might not put it in the exact language of the court, but what they were endeavoring to testify to was the market value of the land for a bridge site or for a ferry site. Appellant had a right to introduce testimony of the value of the land for a bridge site or a ferry site.

Appellees could develop on cross-examination what elements they took into consideration, and could also develop on cross-examination the knowledge that the witnesses had of its value, and all other circumstances that affected the credibility of the witnesses or tended to show their knowledge of the thing about which they testified. It is, said in the Scott case, above referred to:

"Finally, it is insisted by counsel for appellant that there is no testimony tending to support the finding of the circuit court as to the value of the land taken. They contend that the only value of the land, as shown by the testimony of appellees themselves, was its use as a ferry landing, and that this is not an element of value that can be considered by the court in awarding damages in a condemnation suit. It is true that the testimony on the part of appellees tended to show that the land in question was not dedicated to the public, but was reserved in the dedicator on account of its value as a ferry landing. The court, however, is not concerned with the purpose which caused the dedicator to reserve the land. He might reserve it for ferry purposes as well as for any other purpose. The question to be determined by the court in awarding damages in this case was the value of the land taken, and, in determining this value, its availability for any use to which it is plainly adapted can be considered. In view of our decision in the case of *Fort Smith & Van Buren Bridge District* v. *Scott*, 103 Ark. 405, 147 S. W. 440, it can not be said that the finding of the court that appellees were damaged in the sum of $2,500

by the land taken has no evidence of a substantial character to support it.''

Any testimony that will tend to show the market value of the land sought to be taken for any use, or for any purpose for which the land could be used, is competent for the purpose of showing the market value of the land. The market value of the land is the question to be determined.

A tract of land might be very valuable for a bridge purpose and be practically worthless for any other purpose. A tract of land might be very valuable for a railroad right-of-way because of its being a pass between mountains, and yet be almost worthless for any other purpose. But the question to be determined is the value for any purpose for which the land might be suitable, in this case for a bridge or ferry site, and any testimony that would tend to show its value as a site for a bridge or ferry would be competent. The witnesses therefore should have been permitted to testify what their opinion was as to its market value, basing it on the fact that it was suitable for a bridge site or ferry site, or, as they said, including the ferry rights and privileges, which means the same thing.

It is contended also that the revenue or income from the ferry was competent testimony. This would not be competent testimony for any other purpose except as tending to show the market value of the land.

''When a parcel of land is taken by eminent domain, the measure of compensation to be awarded the owner is the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy; in other words, the test is the fair market value of the land. Actual market value at the time of the institution of the condemnation proceedings is usually the inquiry; but, when the defendant has already entered upon the property, and has depreciated its value thereby, the measure of damages is the difference between the fair market value of the whole property at the time of the condemnation and the present market value of the prop-

erty left with the structure thereon. The productive value of land, or the value to its owner, is not the measure of compensation and is not material except so far as it throws light upon the market value.'' 10 R. C. L. 128.

So, in this case, the productive value or the income to be derived from its use is not the measure of compensation, and is not material except so far as it throws light upon the market value, but, for this purpose, it is competent and material.

In the proceedings to condemn any kind of property having a rental value, the income or rent from the property would be competent evidence to be considered solely for the purpose of determining the market value. There might be two buildings for rent situated in different surroundings, different districts with different environments, and, although the buildings might be the same in every respect so far as the material, structure, building, etc., is concerned, yet, because of different environments, one might rent for two or three times as much as the other. In determining the value of this land, both the buyer and the seller would consider these facts and consider the income derived from each in determining the market value.

The court therefore erred in directing a verdict, but, instead of doing that, should have permitted witnesses to testify as to the value of the land, taking into consideration the uses for which it was suitable, and submitted the question to the jury, under proper instructions. It was also error to permit amendment to the effect that plaintiff did not intend to interfere with the operation of the ferry near said bridge site, etc. Of course, every one knows that a free bridge would destroy the value as a ferry site. The sole question here is the market value of the land taken.

For the errors indicated the cause is reversed, and remanded for a new trial.

Mr. Justice SMITH concurred in judgment.

Mr. Justice McHANEY dissented.

OPINION ON REHEARING.

MEHAFFY, J.    The facts are fully stated in the original opinion, and it is unnecessary to restate them.    A majority of the court has reached the conclusion that the petition for rehearing should be overruled, but that the opinion should be modified.    A majority of the court are of the opinion that the evidence as to the amount of revenue or income from the ferry was not competent testimony.    Mr. Justice HUMPHREYS and the writer do not agree in this opinion, but think that the amount of revenue or income is competent for the purpose of showing the market value of the property.    But the court now holds that evidence of the amount of tolls or income from the ferry is inadmissible, and that the original opinion should be modified to this extent only.

After a very careful reexamination of the entire case, a majority of the Judges have reached the conclusion that the original opinion is correct, except as to the testimony of amount of tolls or revenue from the ferry, and the petition for rehearing is therefore denied.