HOT SPRING COUNTY, ARK. *v.* CRAWFORD.

5-1628                                          316 S. W. 2d 834

Opinion delivered October 20, 1958.

*W. R. Thrasher* and *Bill Demmer,* for appellant.

*Joe W. McCoy* and *J. C. Cole,* for appellee.

Ed. F. McFADDIN, Associate Justice. This is an eminent domain proceeding; and the jury verdict in favor of the landowner must be reversed because of the admission of improper evidence in the matter of the damages.

The County Court of Hot Spring County made an order for the widening of U. S. Highway No. 67, and thereby took one and one-fifth acres of land of the appellees, Mr. and Mrs. Crawford. The land was on both sides of the highway, which separated the Crawford's home from their place of business, called "Blue Top", a restaurant and truck stop, about three miles north of Malvern. When the County Court disallowed the Crawfords' claim, they appealed to the Circuit Court where the case was tried to a jury, with a verdict and judgment in favor of the Crawfords; and Hot Spring County has appealed.

In the trial in the Circuit Court the Crawfords claimed that the highway had been lowered to such an extent that their patrons could no longer use the "Blue Top" as a truck stop, and that as a consequence the business was ruined, to the Crawford's permanent damage. As one method of establishing the damages for the taking of their land and the damages to the lands remaining, the Crawfords were allowed to show — over objections of appellant — (a) that their net profits[1]

---

[1] Here is the record when Mr. Crawford was questioned on the point:

"Q. About what was the average gross income that was being produced by that property out there over those three years?

A. I will have to refresh my memory.

Q. Well, get it just as accurately as you can estimate it, you don't have to get it exact. The average gross income, total amount of income?

A. Around $42,000 a year.

Q. And about what was the net profit to you from that income?

MR. DEMMER: Your honor, I am going to object to this. I am going to object on the grounds, that profits on a business operated by a person who owns the land is entirely not proper for the establishment of any type of value of compensation.

MR. COLE: We are merely trying to prove, Your Honor, the productive value of the land as an element in arriving at its value.

MR. DEMMER: Sir, I am saying that profit as far as income is

from the operation of the "Blue Top", restaurant and truck stop, were $4,000.00 per year; and (b) a real estate appraiser testified that in determining damages to the Crawford land he capitalized this $4,000.00 net profit per annum[2] and used the result as a factor in fixing the Crawfords' damages at $48,350.00. The greatest amount that any witness for the County said the Crawfords were entitled to receive was $10,065.00; the jury verdict was for $28,000.00.

The Court allowed the jury to consider net profits from the business operated on the land as a factor in arriving at the land damages the Crawfords claimed; and this was an error fatal to the verdict and judgment. Our Constitution says in Art. 2, § 22, ". . . and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor". We have many cases on damages in eminent domain proceedings. Some of them are: *Little Rock Junction Ry.* v. *Woodruff,* 49 Ark. 381, 5 S. W. 792; *Stuttgart & R. B. RR.* v. *Kocourek,* 101 Ark. 47, 141 S. W. 511; *Kirk* v. *Pulaski County Road Imp. Dist.,* 172 Ark. 1031, 291 S. W. 793; *Miller Levee Dist.* v. *Wright,* 195 Ark. 295, 111 S. W. 2d 469; *Sewer Imp. Dist.* v. *Jones,* 199 Ark. 534, 134 S. W. 2d 551; and *Pulaski Coun-*

---

concerned is not a proper element to consider.

MR. COLE: Not as such, but is so far as it affects market value.

MR. DEMMER: I don't believe it is, the only time it can show income is when it shows the highest and best use for business purposes.

THE COURT: Objection overruled.

Q. What would be the approximate average net income that the property produced?

A. About $4000 a year."

[2] Here is the appraiser's testimony on the point:

"A. Yes, sir, I took a number of things into consideration. I took into consideration the net income that the property produced for Mr. and Mrs. Crawford.

Q. You did consider the net income in arriving at your value?

A. As one approach to my value.

Q. Would you tell me how you did that?

A. I capitalized the net income from the property.

MR. DEMMER: I am going to request that this witness' testimony be stricken from the record and the jury be requested to disregard it, because capitalization of a net income of a situation of this kind is not proper at all in evaluating as far as market value of a piece of property is concerned.

THE COURT: Motion denied."

*ty* v. *Horton,* 224 Ark. 864, 276 S. W. 2d 706. But we have directly held that the net profit of the business operated on the damaged land is not a proper factor for consideration by the jury in assessing the damages. In *K. C. So. Ry. Co.* v. *Anderson,* 88 Ark. 129, 113 S. W. 1030, in discussing the damages for taking of property, this Court said:

"But this does not reach to damages to the business of the landowner which are incident to the enforced purchase of his property. Thesé are not subjects for assessment in condemnation proceedings, under the weight of authority and the sounder reasoning on the subject."

In *Desha* v. *Independence County Bridge Dist.,* 176 Ark. 253, 3 S. W. 2d 969, land at or near a ferry site was condemned for the location of a bridge. The Trial Court allowed the ferry owner to show the net profits received from operating the ferry. This Court on rehearing said: "A majority of the Court are of the opinion that the evidence as to the amount of revenue or income from the ferry was not competent testimony."

The holding of our Court, as above quoted, is in line with the great weight of authority. In 7 A. L. R. 163 there is an annotation, "Profits derived from business conducted on property taken by eminent domain as evidence of market value"; and the annotator cites cases from fifteen jurisdictions to sustain this statement: "With remarkable unanimity the American jurisdictions hold that evidence of profits derived from a business conducted on property is too speculative, uncertain, and remote to be considered as a basis for computing or ascertaining the market value of the property in condemnation proceedings."[3] In Nichols on "Eminent Domain", Third Edition § 19.3 (Vol. 5, p. 222), the text writer sums up the holdings in the following language:

[3] There is an annotation in 134 A.L.R. 1125 entitled, "Distinction between income or profits from business on land and income or profits from use of land, as affecting admissibility of evidence in that regard on question of damages in eminent domain", which is worthy of consideration by anyone studying the point herein discussed.

"It is, accordingly, well settled that evidence of profits, of a business conducted upon land taken for the public use is not admissible in proceedings for the determination of the compensation which the owner of the land shall receive. The profits of a business are too uncertain, and depend on too many contingencies to safely be accepted as any evidence of the usable value of the property upon which the business is carried on. Profits depend upon the times, the amount of capital invested, the social, religious and financial position in the community of the one carrying it on, and many other elements which might be suggested. What one man might do at a profit another might only do at a loss."

We, therefore, conclude that the Trial Court was in error in allowing net profits from the business operated on the damaged land to be shown to the jury as an element or circumstance to be considered in arriving at a verdict. There are other assignments urged in the briefs, But as those matters may not occur on a new trial, we find it unnecessary to list or discuss them.

For the error indicated, the judgment is reversed and the cause remanded.