HOUSING AUTHORITY OF THE CITY OF LITTLE ROCK *v.* MARY ROCHELLE AND ELLA ROCHELLE

5-5387

459 S. W. 2d 794

Opinion delivered November 23, 1970

*Smith, Williams, Friday & Bowen;* By: *William L. Terry,* for appellant.

*Louis "Art" Dodrill,* for appellees and cross-appellants.

JOHN A. FOGLEMAN, Justice. On direct appeal Housing Authority of the City of Little Rock asserts that a jury award of compensation to appellees in the amount of $45,000 in an eminent domain proceeding was excessive and not supported by substantial evidence. We do not agree that the evidence supporting the verdict was insubstantial.

The property taken was a lot 50 feet wide and 140 feet deep on which there was an apartment building. It is located at Louisiana and Eleventh Streets in Little Rock. It fronts on Louisiana, is five blocks from the downtown shopping area and one block from the First Baptist Church, and was purchased by the Rochelle sisters, appellees here, in 1950. The building was divided into six apartments, one of which was occupied by appellees, one of whom is retired and the other employed by Western Auto Supply Company as a saleslady. The remaining five apartments were occupied by tenants who paid a rental of $60 per month. The apartments were furnished, and appellees paid for all utilities. It is conceded that the building was well maintained, particularly on the interior. Appellant's expert witnesses valued the lot alone at $22,400 and $22,500, but only valued the building at $10,000 and $8,300, respectively. One of them stated that the building was very sound

and that, with normal maintenance, it would last for 200 to 300 more years.

Tenants, who occupied apartments in the building at the time of the taking and had to find other apartments, placed the fair rental value of the units at $90 to $100, based upon the amount for which like apartments were being rented. Bill Burroughs, who deals in rental property in Little Rock fixed the rental value of the apartment occupied by appellees at a minimum of $125 per month and the remaining five at $80 per month, which he said was $10 per month less than any other apartment in that neighborhood.

The taxes on the property amount to $318 per year and insurance premiums, $167. Ella Rochelle stated that depreciation amounted to $693 per annum and utilities, $1,050. She placed maintenance costs at approximately $200 annually.[1] She calculated that the property would produce a gross annual income of $6,480 per year based upon a rental value of $90 per month per apartment, or a net income of $4,052 per year. She testified that an investment of $80,570 would be required to produce a like income at an interest rate of 5% per annum. This is obvious from a simple mathematical calculation.

Capitalization of income is a recognized method of arriving at the fair market value of real estate used to produce rental income, in determining just compensation in eminent domain cases. We have long held evidence of rental value to be admissible as a factor to be considered in determining just compensation. *Desha* v. *Independence County Bridge District No. 1*, 176 Ark. 253, 3 S. W. 2d 969. See also, *Springfield* v. *Housing Authority of the City of Little Rock*, 227 Ark. 1023, 304 S. W. 2d 938; *Osceola Housing Authority* v. *Gillespie*, 244 Ark. 248, 424 S. W. 2d 521. This is certainly a matter that would be considered by a prospective purchaser in estimating the market value of the premises. *Regents of University* v. *Irwin*, 239 Minn. 42, 57 N. W. 2d 625 (1953). It has been said that, when property is

---

[1]One of appellant's witnesses placed maintenance costs at $350 per year, which included a $50 reserve for reroofing.

rented for the use to which it is best adapted, the rent capitalized at the rate which local custom adopts for that purpose forms one of the best tests of value. 5 Nichols, Eminent Domain, 3rd Ed. 19-6, § 19.2. This method is an accepted one, not uncommonly or infrequently utilized in eminent domain cases. See Winner, Rules of Evidence in Eminent Domain Cases, 13 Ark. L. Rev. 10, 18; *Bergeman v. State Roads Comm.*, 218 Md. 137, 146 A. 2d 48 (1958); *State v. Nunes*, 233 Ore. 547, 379 P. 2d 579 (1963); *Redevelopment Agency v. Zwerman*, 240 Cal. App. 2d 70, 49 Cal. Rptr. 443 (1966); *In re Lincoln Square Slum Clearance Project*, 15 A. D. 2d 153, 222 N. Y. S. 2d 786 (1961), aff'd 16 N. Y. 2d 497, 260 N. Y. S. 2d 439, 208 N. E. 2d 172 (1965), motion to reargue and amend remittitur denied 16 N. Y. 2d 828, 263 N. Y. S. 2d 169 210 N. E. 2d 459 (1965); 1 Orgel on Valuation under Eminent Domain, 648, § 157. In proceedings involving property having a rental value, the fact that part of it is occupied as a residence by the owners does not make evidence of this value any less competent in determining market value. *Regents of University v. Irwin, supra.* See also, *Bergeman v. State Roads Comm., supra.* The fair rental values may be considered when they are greater than the rentals reserved at the time of the taking. *In re Lincoln Square Slum Clearance Project*, 16 N. Y. 2d 497, 260 N. Y. S. 2d 439, 208 N. E. 2d 172 (1965). We have strongly implied that this method is acceptable when the income from the property consists only of rents. *Hot Spring County v. Bowman*, 229 Ark. 790, 318 S. W. 2d 603. One of appellant's expert witnesses testified that the income approach is one of three used in arriving at market value. He felt that it was the best indicator of value on this particular piece of property.[2]

---

[2]While he stated that he took this approach into consideration in making his appraisal, he seems to have done so only in relating the rents received by appellees to rents received from what he considered to be comparable properties in establishing sales of the latter as indicative of market value. He stated that he first arrived at the market value of the lot from comparable sales and then determined the value of the building from that portion of the rental income attributable to the building by some method he did not disclose. We do not understand this to be "capitalization of income."

When we view this evidence in the light most favorable to appellees, as we must, it substantially supports the verdict. Even though Ella Rochelle did not make any deduction for the amount of rent attributable to the furnishings, for which appellees were compensated by appellant, the only evidence as to this amount was presented through one of appellant's expert witnesses who fixed it at $5 per apartment per month. This would amount to $360 per year. If the net income based on rental value was reduced by this amount it would be $3,692, which would represent 5% on an investment of $73,840. The witness stated one might, at present, be able to realize an income of 7½% on an uninsured investment. This net income at this rate of interest would require an investment of $49,226. The witness stated a 6% return on an insured income was probable and that not more than 7% could be had. A 7% return would require an investment of $52,742.85, and a 6% return, $61,533.37. A 7½% return on the amount of the verdict, would be only $3,375, and a 5% return would be only $2,250.

Bill Burroughs actually used a crude but practical application of the income approach to market value when he testified that buyers of rental real estate considered a purchase "a good buy" whenever the income from the property would "pay for it" in 10 years. On this basis he calculated that, using what he considered conservative rental values of the Rochelle apartments, the income would equal a purchase price of $50,400 in eight years. If the basis of calculation used was 10 years, the price for "a good buy" would be $63,000.

We realize that appellant's witnesses considered the actual rents to be the rental value of the property, but the jury returned a verdict within the limits of substantial evidence on the part of appellees. Since the verdict had substantial evidentiary support, we cannot say that it is excessive.

On cross-appeal, appellees contend that the circuit court erroneously denied them interest on the full

amount of the compensation awarded from the date of taking, November 8, 1968. We agree.

Interest is awarded in order that an owner whose property is taken may be assured of just or full compensation. Otherwise he would, for a time, be deprived of both the use and the value of his property. *Arkansas State Highway Commission* v. *Stupenti,* 222 Ark. 9, 257 S. W. 2d 37. Appellant seeks to distinguish this case from *Stupenti* by its assertion that appellees were not entitled to interest on the estimated just compensation deposited for this particular tract by appellant at the time the circuit court authorized its entry upon the land. In *Stupenti* the deposit was for the lands of numerous owners. Appellant is mistaken in the principle applied in *Stupenti,* however. We said that the deposit there could not be considered as a definite tender for the specific land, because a deposit of the compensation award does not amount to a true tender or stop the recovery of interest on the final award. We did acknowledge that there were circumstances under which a tender to a landowner in a condemnation proceeding might bar the recovery of interest thereafter. Such circumstances do not exist here.

Appellant is authorized to exercise the power of eminent domain in the manner prescribed in Ark. Stat. Ann. §§ 35-201—35-206 (Repl. 1962) or in the manner provided by any other applicable statutory provisions for the exercise of the power. Ark. Stat. Ann. § 19-3015 (Repl. 1968). In its complaint, appellant elected to proceed in the manner provided by Ark. Stat. Ann. §§ 35-201—206. A preliminary deposit designated by the circuit court as a condition of entry upon the lands by the condemnor pursuant to Ark. Stat. Ann. § 35-206 is not a tender which may be withdrawn by the landowner but is only security for the payment of the final award. *Ft. Smith & W. R. Co.* v. *Hare,* 116 Ark. 10, 172 S. W. 835; *Reynolds* v. *Louisiana, A. & M. Ry. Co.,* 59 Ark. 171, 26 S. W. 1039; *Ex parte Reynolds,* 52 Ark. 330, 12 S. W. 570. In the case last cited, it was pointed out that this deposit of money was devised as

a substitute for the earlier requirement of a bond with sureties, as a prerequisite for entry upon lands by a condemnor, when progress would be impeded by awaiting the fixing of the amount of the final award of compensation to the landowner. Under these circumstances appellees were no more entitled to draw the deposit from the registry of the court than was the landowner in *Stupenti.* As a result, denying them interest on the full award from the date of entry would deny them just compensation, because they had the use of neither the land nor the money until final judgment was entered.

The judgment is affirmed on appeal. It is reversed on cross-appeal and judgment entered for interest on the amount of the jury verdict at the rate of 6% per annum from November 8, 1968.