OZARK GAS TRANSMISSION SYSTEMS, A Partnership, By OZARK GAS PIPELINE, General Partner *v.* Carroll BARCLAY and Janet M. BARCLAY

CA 83-45                                   662 S.W.2d 188

Court of Appeals of Arkansas
Division I
Opinion delivered December 14, 1983
[Rehearing denied January 18, 1984.]

*Gordon & Gordon, P.A.,* by: *Ben Caruth,* for appellant.

*Clark, McNeil & Adkisson,* by: *William M. Clark,* for appellees.

GEORGE K. CRACRAFT, Judge. Ozark Gas Transmission Systems appeals from a judgment entered in the Circuit Court of Faulkner County on a jury verdict which awarded Carroll Barclay and his wife Janet the sum of $30,700 as compensation for their lands taken by eminent domain for a pipeline easement. Three points of error are advanced by appellant, all of which involve objections to appellee's expert witness's testimony.

Carroll Barclay was fifty-six years of age and had been born and raised on a family fruit farm in New Jersey. After his marriage he continued to operate the family farm and purchased several others. In the earlier years his operation was primarily in the wholesale market. This business grew until he was handling over 150,000 bushels of fruit a year in his own business and was on the board of directors of a cooperative which handled in excess of a million bushels.

In 1958 due to higher taxes and rising wage rates he started a direct marketing operation he referred to as a "you

pick them" retail sale where the customer picked his own fruit in the orchard. This undertaking continued to grow and he established several other such orchards in different commercial areas. In 1977 he determined to established another orchard and began to look for a location in the Carolinas, Oklahoma and Arkansas. At that time the appellee was a member of the Board of Trustees and President of the New Jersey Apple Council which was involved with the promotion of apples and research work for improved production techniques. He was also President of the Board of Managers of Rutgers University at its experiment station.

In 1979 appellee found what he considered the ideal topographic location for the establishment of a peach and apple orchard near Guy, Arkansas and purchased a 120 acre tract. At the time of purchase this was raw, overgrown land which had not been cultivated since the 1930's. He cleared it, built ponds for irrigation, put down wells, subsoiled, tilled and fertilized the land and placed six tons of lime per acre on the orchard areas. He planted 2500 peach trees and 2000 apple trees on the property. The irrigation system provided a nozzle at the base of each tree for watering during dry spells and drainage was provided from each tree to avoid what he called "wet feet" in wet periods. An expert agricultural economist from the University of Arkansas Cooperative Extension Service described the appellee's orchard as one in which he had put together "the most recent technology that we had in planning and beginning the production of fruit." He referred to appellee as "the best [horticulturist] I've ever seen," and stated that all of appellee's employees possessed similar expertise.

In 1981 the peach orchard produced its first peaches which were described as "exceeding our highest expectations." The apple orchard produced no fruit because the trees were not mature enough. In the fall of 1981 appellant took a strip of land 70 feet in width and consisting of 3.12 acres for an underground pipeline. This strip included a small area of woodland but took 2.17 acres of the orchard. It was stipulated that the highest and best use to which this property could be put was as a peach and apple orchard.

The appellee's expert appraiser Mr. Collins testified that he could not, in reaching his market value before and after the taking, utilize the market value approach because there was only one other orchard in Faulkner County and none had ever been sold. Nor could he utilize sales of comparably sized properties in the vicinity by making necessary adjustments for best use because the differences in use were so great the adjustments would be meaningless. He stated that it would be like comparing a $10,000 piece of property to a $1,000,000 one. Under this approach the witness capitalized the anticipated income from each acre of orchard over the recognized life expectancy of the trees. These figures were utilized to establish the market value attributable to the orchard. He appraised those lands not in orchard on an entirely different basis, and added the two arriving at his opinion of the market value of the property before the taking. Capitalization of income approach was also used in determining the value of the lands actually taken.

The appellant first contends that profits from a business enterprise may not be used as a factor in assessing damages for the taking of land relying on *Ark. State Hwy. Comm.* v. *Carpenter,* 237 Ark. 46, 371 S.W.2d 535 (1963); *Ark. State Hwy. Comm.* v. *Wilmans,* 236 Ark. 945, 370 S.W.2d 802 (1963); *Ark. State Hwy. Comm.* v. *Addy,* 227 Ark. 768, 318 S.W.2d 595 (1958); *Hot Spring County* v. *Crawford,* 229 Ark. 518, 316 S.W.2d 834 (1958). We agree that although this is a correct general statement of the law applicable to the consideration of profits of a business conducted on the premises it has no application to the facts in this case.

Our courts have recognized a distinction in this regard between opinion testimony based on profits derived from a business enterprise conducted on the condemned lands and those derived from the land itself. The so called "business profits rule" excludes evidence only as to profits from the former. In *Ark. State Hwy. Comm.* v. *Wilmans, supra,* the court excluded capitalization of profits derived from a tavern operated on the condemned land. In *Hot Spring County* v. *Crawford, supra,* and *Ark. State Hwy. Comm.* v. *Addy, supra,* evidence of the profits derived from a truck stop and a

race track conducted on the premises was excluded for that same reason.

Housing Authority of Little Rock v. Rochelle, 249 Ark. 524, 459 S.W.2d 794 (1970) and North Little Rock Urban Renewal v. Van Bibber, 252 Ark. 1248, 483 S.W.2d 223 (1972) recognize an exception to the rule which permits capitalization of income in arriving at fair market value of income producing rental property. The distinction was clearly pointed out in Ark. State Hwy. Comm. v. Lone Star, Inc., 4 Ark. App. 103, 628 S.W.2d 23 (1982) where it was declared permissible to capitalize the value of the leasehold interest in a store located on the condemned property but not the profits derived from its operation.

In Ark. State Hwy. Comm. v. Dupree, 228 Ark. 1032, 311 S.W.2d 791 (1958), Ark. State Hwy. Comm. v. Addy, supra, and Ark. State Hwy. Comm. v. Ormond, 247 Ark. 867, 448 S.W.2d 354 (1969) our court recognized the general rule that this exception extended to capitalization of profits derived from the land when used for agricultural purposes.

We conclude from a review of these cases that capitalization of income is a recognized method of arriving at the fair market value of real estate where the income is derived from the land itself rather than from a business operated upon the land. The reason for this distinction is that there can be no compensation for the loss to a business being operated on the property because it would permit consideration of too many intangibles, such as the extent to which the owner could have transferred his business to a new location and the relative degree of commercial skills. Ark. State Hwy. Comm. v. Wilmans, supra. In the case of farming operations or rental property, however, the prospective revenue is derived from the use of the property itself and the anticipated profits are matters that a willing buyer would consider in estimating the market value of the property. Housing Authority of Little Rock v. Rochelle, supra. We find no error in permitting the capitalization of income approach in arriving at fair market value in this case.

The appellant next argues that the appellee's expert's testimony should have been stricken because the expected profits testified to had no relation to the land in question, which had produced only one peach crop, and were too speculative to be admissible and because they were based on fruit farming as a whole. *Ark. State Hwy. Comm.* v. *Ormond, supra.* We see a distinction between the factual situation here and that in *Ormond.* There the landowner who was a realtor and farmer testified that the highest and best use of his land was for catfish farming and based his opinion as to the market value on capitalization of income. The landowner testified that his opinion was based entirely on "income he had anticipated upon the basis of his own estimates of market prices, yields and costs." The court noted that the landowner had no experience in this business or anything relating to it, that there was "no reasonable basis for Ormond's opinion as to the value of the entire tract before the taking," and stated:

> Even if we should consider that evidence of income and production from commercial catfish farming is admissible under the recognized exception in cases of agricultural property, as appellees urge, there is no exception which permits such values to be based on pure speculation, as must be the case when the testimony is given by one without experience or expertise in the undertaking about which he testifies, when there is no history as to the particular land upon which to base anticipated income or production.

In the case at bar even though this was a new orchard with no income history the appraiser had a reliable and trustworthy basis for his estimates of anticipated annual income. Some of his information was derived from appellee, whose expertise in fruit farming was established. Primary reliance, however, was placed on an exhaustive study made by the University of Arkansas Cooperative Extension Service in which anticipated profits for peach and apple orchards were determined on an annual basis during the life expectancy of the trees. These figures were determined by comparison of income over a period of years with varying locations in Arkansas, weather conditions, insect infesta-

tions and other factors affecting production. There was evidence that these figures also took into consideration the cost of production and marketing and relative skills of the individual farmers. Adjustments were made for all of those factors affecting income in order that the figures projected would reflect the estimate of anticipated annual income of the average orchard during its expected life. There was evidence that both appellee's orchard and his skill were far above average. It was testified that these studies were applicable to appellee's location. We conclude that there was a reasonable basis for the expert's opinion and there was no error in refusing to strike his testimony. Appellant's objection goes merely to the weight of it and not to its admissibility.

Appellant next contends that the trial court erred in refusing to strike the testimony of the expert witness as to the damage resulting to the remainder of the tract by the taking. We do not agree. Mr. Collins, after determining the value of the fee simple title of the acreage actually taken in the amount of $23,821.00, determined that the value of the remaining lands was reduced as a result of the easement by an additional $42,316.00. The witness testified on cross-examination that if there were two farms identical in every respect except that one had a pipeline running through it and the other did not, that an unobligated buyer would purchase the one without the pipeline because its existence diminished the value of the other property. He was asked if he had ever been involved with a buyer in that situation or to state an instance in his experience where a pipeline crossed on a piece of property and had depreciated its value. He answered that he could not — that he had never seen an instance where he had two identical farms, one with a pipeline and one without. Appellant argues that because the witness had no comparable sales his opinion was without reasonable basis. He stated, however, that his opinion was based upon his expertise and knowledge that the farm with a pipeline was not as attractive as one without from an economic point of view.

It has been the rule for many years that the testimony of an expert witness should not be stricken unless it is

demonstrated that he has no reasonable basis for the opinion and that opinion testimony of an expert witness can be considered even though not based entirely on comparable transactions. *Fulmer* v. *Southwestern Bell Tel. Co.,* 9 Ark. App. 92, 654 S.W.2d 603 (1983); *Ark. State Hwy. Comm.* v. *Russell,* 240 Ark. 21, 398 S.W.2d 201 (1966). In his testimony he said that he determined the effect on the remaining lands of the removal of the 70 foot strip by considering the increased production expenses on the remaining orchard occasioned by the gap. Irrigation pipes would have to cross the areas with no trees to irrigate, spray rigs which cannot be turned off for a 70 foot gap would use chemicals and fuel in crossing the area, and other time and expense would be wasted in other horticultural practices required to be done on a row basis. He further testified that these additional agricultural expenses occasioned by the existence of the pipeline would cause a willing buyer to stop and consider that these extra costs could be avoided by purchase of the other land. It was his view that a reduction of probable income occasioned by the extra expenses resulting from the gap between the orchards as a result of the taking were matters which would be fully considered by a prospective purchaser in determining the market value and the price he would be willing to pay for the property. The appellee also testified without objection to these same additional expenses and some others which would be occasioned by the taking and agreed that they would cause a purchaser to ponder. We cannot say that Mr. Collins did not give a fair and reasonable basis for his opinion that creating a gap between the orchards would affect the market value of the remaining acreage. Again we think appellant's argument goes more to the weight to be given this testimony than to its admissibility.

Appellant finally contends that the trial court erred in instructing the jury that damages were recoverable for the full market value of the lands taken for the easement without regard to the permissive use of the surface by the condemnee since the condemnor acquires the right to make use of the right-of-way as future needs may require for the purposes for which the right-of-way was acquired. Appellant recognizes that this is a well settled rule establishing the measure of

damages for the taking of easements. *Baucum* v. *Ark. Power & Light Co.,* 179 Ark. 154, 15 S.W.2d 399 (1929). It argues, however, that it took the easement under a "Certificate of Public Convenience and Necessity" created by an act of Congress which conferred on it the right of eminent domain and, therefore, the measure of damages for the taking of easements applied in federal courts (which he argues differs from our own) should apply. We do not agree.

15 U.S.C. § 717f(h) (1976) provides that when the holder of such a certificate cannot acquire the easement by agreement, it may acquire it by the exercise of the right of eminent domain in the United States District Court for the district in which the land lies or in the state courts. It further provides that where the proceedings are instituted in the United States courts, "The practice and procedure . . . shall conform as nearly as may be with the practice and procedure in similar action or proceeding in courts of the State where the property is situated." We find nothing in the language of this enactment which requires in either court the application of rules of substantive law differing from those applicable in similar proceedings under State law. We find no error.

Affirmed.

CORBIN and CLONINGER, JJ., agree.