2011 Ark. App. 701
### DELTA REGIONAL AIRPORT AUTHORITY, Appellant

v.

### Grover GUNN, III, Michael Scott Gunn, and Edgar Lindsey Gunn, and J.T. Jarrett and Sons, an Arkansas General Partnership, Appellees.

No. CA 11–180.

Court of Appeals of Arkansas.

Nov. 16, 2011.

W. Frank Morledge, Forrest City, for appellant.

Berry Michael Easley, Forrest City, Bruce B. Tidwell, Little Rock, for appellee.

JOHN B. ROBBINS, Judge.

In this eminent-domain case, appellant Delta Regional Airport Authority appeals from the jury's award of compensation of $150,000 to appellee J.T. Jarrett & Sons, a partnership that holds a leasehold interest in the property. Delta also appeals from the circuit court's order granting attorney's fees to the landowners, appellees Grover Gunn, III; Michael Scott Gunn; and Edgar Lindsey Gunn (collectively, the Gunns). We affirm in part and reverse in part.

Delta is a public corporation formed for the purpose of constructing and operating a regional airport for the general public in St. Francis and Cross Counties. Delta sought to acquire 209 acres in St. Francis County from the Gunns. When negotiations failed, Delta filed this eminent-domain action on January 21, 2009, to acquire the fee title from the Gunns and to acquire Jarrett's leasehold interest. That lease had seven years remaining. Delta deposited $505,000 with the clerk of the circuit court, and an order was entered allowing Delta to take possession of the property.

The Gunns counterclaimed against Delta, alleging breach of the purchase contract. Jarrett filed a counterclaim against Delta seeking damages, or, in the alternative, the right to keep farming for the remainder of the lease term. Jarrett also filed a cross-claim against the Gunns, alleging that it had the right of first refusal to purchase the property in the event the Gunns sought to sell.[1]

Based on answers to discovery, Delta filed a motion in limine seeking to prohibit Jarrett from introducing evidence of its anticipated lost profits. The circuit court denied the motion to the extent that it sought to prohibit evidence as to what Jarrett paid in rent. In so ruling, the court said that it realized that proof of what Jarrett earned from the rental of the property was perilously close to being evidence of lost profits. The court also noted that the rent paid does not establish the fair market value.

The case was tried to a jury, which found for Delta on the Gunns' contract claim and fixed the Gunns' compensation for the taking at $580,000. The jury also fixed the compensation for the taking of the Jarrett leasehold interest at $150,000. Judgment was entered on the jury's verdict on July 28, 2010.

The Gunns filed their motion seeking attorney's fees on August 2, 2010. They

---

1. The circuit court granted partial summary judgment to the Gunns on this cross-claim.

argued that they were entitled to attorney's fees under Ark.Code Ann. § 18–15–605(b) (Repl.2003) because the jury awarded total compensation that exceeded Delta's initial deposit by more than 20 percent. Delta responded to the motion by arguing that there was no statute that authorized an award of fees in this case and that section 18–15–605(b) applied only to municipal corporations and corporations that supply water. Jarrett filed a separate motion for attorney's fees on September 20, 2010. The motion cited Ark.Code Ann. §§ 14–362–104, 18–15–605, and *City of Fort Smith v. Carter*, 364 Ark. 100, 216 S.W.3d 594 (2005) (*Carter I* ), as authority for an award of fees.

By order entered on December 22, 2010, the circuit court awarded the Gunns attorney's fees of $43,334.38 and costs of $2,322.15. This represented a 30 percent reduction of the amount sought for the unsuccessful prosecution of the Gunns' counterclaim. The order did not cite any authority for the award, but stated that the court considered the motion and the parties' briefs addressing the motion. The court denied Jarrett's motion for attorney's fees and costs, stating that there was no authority for such an award. Delta filed timely notices of appeal from both the judgment in favor of Jarrett and the judgment for attorney's fees and costs in favor of the Gunns.

### Compensation to Jarrett

Under this heading Delta argues two points: (1) that the circuit court erred in denying its motion for a directed verdict and (2) Jarrett's proof was improper proof of anticipated lost profits. We address both points together.

In evaluating loss of value to a leasehold interest, the correct measure of damages is the amount by which the fair market value of the lease exceeds the agreed-upon rent. *Lamar Advantage Holding Co. v. Arkansas State Hwy. Comm'n*, 369 Ark. 295, 253 S.W.3d 914 (2007); *Pearson v. Henrickson*, 336 Ark. 12, 983 S.W.2d 419 (1999); *Arkansas State Hwy. Comm'n v. Humble*, 248 Ark. 685, 453 S.W.2d 408 (1970); *Arkansas State Hwy. Comm'n v. McHaney*, 234 Ark. 817, 354 S.W.2d 738 (1962). Further, the supreme court in *McHaney* defined rental value:

> By rental value is meant not the probable profits that might accrue to the tenant, but the value, as ascertained by proof of what the premises would rent for or by evidence of other facts from which the fair rental value may be determined.

234 Ark. at 819, 354 S.W.2d at 740 (quoting *Reeves v. Romines*, 132 Ark. 599, 602, 201 S.W. 822, 822 (1918)). There is no difference in principle where the rent agreed upon was part of the crop instead of money. *Reeves*, 132 Ark. at 602, 201 S.W. at 822. However, in later cases, the supreme court has held that there is an exception to the rule against evidence of lost profits in cases of agricultural property. *See Arkansas State Hwy. Comm'n v. Ormond*, 247 Ark. 867, 448 S.W.2d 354 (1969); *Arkansas State Hwy. Comm'n v. Weir*, 237 Ark. 692, 376 S.W.2d 257 (1964); *Arkansas State Hwy. Comm'n v. Addy*, 229 Ark. 768, 318 S.W.2d 595 (1958); *Hot Spring County v. Crawford*, 229 Ark. 518, 316 S.W.2d 834 (1958). The reason for the distinction is that, in the case of agricultural land, the income in question was derived from the use of the property itself. *See Lamar Advantage Holding, supra; Ozark Gas Transmission Sys. v. Barclay*, 10 Ark. App. 152, 662 S.W.2d 188 (1983). It was not error for the circuit court to admit evidence of the value of Jarrett's crops that include profit because those profits were derived from the use of the land itself and not merely a business conducted on the land.

■ Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. *Advanced Envtl. Recycling Techs. v. Advanced Control Solutions, Inc.*, 372 Ark. 286, 275 S.W.3d 162 (2008). Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id.* It is not this court's place to try issues of fact; rather, this court simply reviews the record for substantial evidence to support the jury's verdict. *Id.* In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.* We hold that there is substantial evidence to support the jury's verdict.

■ Aubrey Jayroe, Jarrett's accountant for approximately twenty years, calculated the average rent Jarrett paid to the Gunns at $42,732.34 per year. He also calculated that, based on those averages, the rent for the seven years remaining on the lease would total $299,126.38. He concluded:

> That [$202,669] is what I computed to be the total value of the lease based on gross income that the Jarretts would receive less the cost of production over the remaining seven years. That is the cost of the value of what the Jarretts would lose by not having that lease over the next seven years based on their actual gross income production less production cost. That is money they would have made and now won't.... It is my opinion that, based on 2006, 2007, and 2008, in the following seven years they would have made $202,669 off the Gunns' 200 acres.

Based on this testimony, the jury could reasonably infer that the fair market value of the remaining life of Jarrett's lease exceeded the amount of rent remaining under that lease.

Ronnie Jarrett, one of the principals in the Jarrett partnership, testified as to his opinion that the value of the remaining lease on the tract at issue was $250,000. Jarrett also submitted other evidence that corroborated the fair rental value of the property by showing its productivity. There was testimony that the tract at issue was above average for cotton, yielding between two and a half to three bales per acre. There was also testimony that Delta's appraiser had underestimated the amount of soybeans the land would yield. Thus, the circuit court did not err in denying Delta's motion for a directed verdict.

*Attorney's Fees to the Gunns*

■ Delta argues that the circuit court erred in awarding attorney's fees to the Gunns because there was no statutory authority for such an award. The Gunns, on the other hand, argue that fees are permitted by Arkansas Code Annotated section 18–15–605(b) (Repl.2003). Generally, in Arkansas, an award of attorney's fees is not allowed, unless an award of fees is specifically permitted by statute. *Harris v. City of Fort Smith*, 366 Ark. 277, 234 S.W.3d 875 (2006).

■ We hold that the circuit court erred in awarding the Gunns their attorney's fees because section 18–15–605(b) does not apply to this case. In interpreting a statute, we give the words in the statute their ordinary meaning and common usage. *Burcham v. City of Van Buren*, 330 Ark. 451, 954 S.W.2d 266 (1997). When a statute is clear, this court will give the statute its plain meaning. *Carter I*, 364 Ark. at 108, 216 S.W.3d at 599. Additionally, in construing any statute, we will place the statute beside other statutes relevant to the subject matter in question, giving it meaning and effect derived from

the combined whole. *Vanderpool v. Fidelity & Cas. Ins. Co.*, 327 Ark. 407, 939 S.W.2d 280 (1997). Eminent-domain statutes are construed in favor of the landowner. *Carter I*, 364 Ark. at 109, 216 S.W.3d at 600.

As noted, the Gunns rely on section 18–15–605(b) as authority for an award of attorney's fees. Section 18–15–605 provides:

(a) The further proceedings in the matter of assessment of damages and the making of deposits to secure the owner shall be the same as is now prescribed by law in reference to condemnation proceedings by railroad, telegraph, and telephone corporations, except that the measure of damages shall be the fair market value of the condemned property at the time of the filing of the petition by the corporation or water association as may be determined by law.

(b) In the case of application for orders of immediate possession by the corporation or water association, if the amount awarded by the jury exceeds the amount deposited by the corporation or water association in an amount which is more than twenty percent (20%) of the sum deposited, the landowner shall be entitled to recover the reasonable attorney's fees and costs.

The Gunns read section 18–15–605(b) to apply to *any* corporation, not just a municipal corporation or other corporation supplying water. However, this reading is overbroad because, when section 18–15–605(b) is read in conjunction with other statutes in the same subchapter, *Flowers v. Norman Oaks Constr. Co.*, 341 Ark. 474, 17 S.W.3d 472 (2000), it is clear that the reference to corporations in 18–15–605(b) applies only to municipal corporations and other corporations that supply water to cities, towns, or rural areas. Section 18–15–601(a) provides in pertinent part:

(a) All municipal corporations in this state and all corporations, including not-for-profit corporations and water associations, which supply any town, city, or village in this state, or the inhabitants thereof, with water, or which supply water to rural customers or consumers, are authorized to exercise the power of eminent domain to condemn, take, and use private property for the use of the corporations when necessary to carry out the purposes and objects of the corporations. . . .

When sections 18–15–601(a) and 18–15–605(b) are read in conjunction with each other, it is clear that the corporations referred to in 605(b) are municipal corporations and those corporations that supply water. The Gunns contend that this argument was rejected by the supreme court in *Carter I, supra.* There, the City of Fort Smith asserted that it exercised its power of eminent domain under Ark.Code Ann. §§ 18–15–401 to –410, rendering Ark.Code Ann. § 18–15–605(b) inapplicable. The supreme court disagreed and concluded that the requirements of subchapter 4 include, and are subject to, the requirements of subchapter 6. 364 Ark. at 109–10, 216 S.W.3d at 600. The city also argued that the plain language of section 18–15–605(b) applied only to corporations and water associations, not municipal corporations. The supreme court rejected this argument as well, noting that the term "municipal corporations" had appeared in the opening paragraph of the statute since its original enactment in 1895. 364 Ark. at 110, 216 S.W.3d at 600–01.

This interpretation of section 18–15–605(b) was made clear in a very recent decision from the Arkansas Supreme Court. *Lois Marie Combs Revocable Trust v. City of Russellville*, 2011 Ark. 186, 2011 WL 1631122. Delta and the Gunns both cite the case as supporting their respective positions. In *Combs Re-*

*vocable Trust,* the supreme court held that the circuit court correctly denied an award of attorney's fees because, in order for section 18–15–605(b) to apply, the condemning authority must have based its underlying condemnation action upon the use of the power of eminent domain to expand its water-supply facilities. Here, Delta was not seeking to expand its water-supply facilities; rather, it was seeking to construct an airport.

The Gunns further argue that Delta's authority[2] to exercise the power of eminent domain is in accordance with the procedure for eminent-domain proceedings prescribed for railroads, and the reference in section 18–15–605(a) to those same procedures demonstrates a legislative intent to allow attorney's fees in condemnation cases utilizing the eminent-domain procedures followed by railroads. However, if that were the intent of the legislature, it would have placed what is now section 18–15–605(b) in the subchapter relating to eminent-domain procedures for railroad, telegraph, and telephone corporations, instead of in the subchapter relating to entities supplying water to cities. It did not.

Affirmed in part; reversed in part.

GLADWIN and HOOFMAN, JJ., agree.

---

2. Delta alleged that it was a regional airport authority operating under the provisions of Ark.Code Ann. §§ 14–362–101 to –129 (1987 & Supp.2011). Section 14–362–120 gives regional airports the power of eminent domain to be exercised in the manner provided in sections 14–358–101 and 14–358–102, pertaining to county airports, and section 14– 360–102, pertaining to municipal airports. Those sections, in turn, state that the procedure for the exercise of eminent domain shall be the procedure prescribed for the exercise of this power by railroads. The procedure for eminent domain by railroads, telegraph, and telephone companies is set forth in Ark.Code Ann. §§ 18–15–1201 to –1207 (Repl.2003).