ARKANSAS STATE HIGHWAY COMMISSION *v.* STUPENTI.

5-75                                257 S. W. 2d 37

Opinion delivered April 20, 1953.

*Phillip H. Loh* and *Rieves & Smith,* for appellant.

*Hale & Fogleman,* for appellee.

WARD, Justice. The only question presented on this appeal is whether the trial court, where the jury had rendered judgment for the value of land under an eminent domain proceeding, was correct in adding interest from the date of entry by the State.

On February 24, 1950, the Arkansas Highway Commission filed suit in the Circuit Court against appellee and other landowners to acquire a right-of-way for the purpose of constructing a highway, and, having made the required deposit in the registry of the Court, took possession of appellee's land on May 5, 1950.

Trial was had on June 24, 1952, resulting in a verdict for $9,500 in favor of appellee, and the Court added interest at 6% per annum from May 5, 1950. The jury's verdict read:

"We, the jury, find for the defendant, Umberto Stupenti, and fix the damages to his lands in the sum of $9,500."

Appellant does not question the principal judgment, but contends the Court erred in adding interest.

The transcript contains no bill of exceptions and the motion for a new trial raises only the question regarding interest in addition to the usual assignments that the judgment is contrary to the evidence and the law. Before the trial it was stipulated that appellee's land was in cultivation.

The principal contention made by appellant is that the State of Arkansas cannot be held to pay interest on its obligations unless bound by an act of the legislature or by a duly executed contract so authorized. Here it is conceded the State is not bound in either manner above stated.

Appellant insists, and it is not denied, that it stands in the same position as the State, itself, in regard to the question under consideration. See *Arkansas State Highway Commission* v. *Nelson Brothers,* 191 Ark. 629, 87 S. W. 2d 394.

In support of its position appellant relies principally on two decisions of this Court which we note below.

*State* v. *Thompson,* 10 Ark. 61. Thompson brought suit against the State to recover $500 which the Sheriff of Phillips County collected from him under a misapprehension of law, and paid into the State Treasury. In considering the allowance of interest on the claim the Court made this statement:

"Upon examination of the whole question, both as regards the liability of the State in her sovereign capacity, and of the several statutes on the subject, we are of the opinion that the State is not liable for interest in any case unless by express agreement she makes herself liable."

While the above quotation apparently supports appellant's position, the reasons assigned to support it are not applicable to the case under consideration. The Court reasoned that the State's method of paying its claims was "out of a common fund raised by taxation for that purpose, pointed out the manner of presenting and allowing them . . . and placed all claimants on an equal footing," and then stated it could "see no reason for placing one class of claimants in a better situation than another" simply because "the claimant had a right to resort to his suit against the State to establish the legality of the claim."

*Jobe* v. *Urquhart,* 102 Ark. 470, 143 S. W. 121. In this case the Board of Commissioners of the State Peni-

tentiary, acting under the authority of an Act of the General Assembly of 1897, purchased land for a prison farm from Urquhart. The negotiated contract provided for a down payment and the balance at later dates, and, although the legislative act did not so provide, the contract provided for the payment of interest on the deferred payments. Jobe, the State Auditor, refused to issue a warrant for the payment of interest and Urquhart brought suit. The Court reaffirmed the rule announced in *State* v. *Thompson, supra,* in these words:

"It is well settled both upon principle and authority that a State cannot be held to the payment of interest on her debts unless bound by an act of the Legislature or by a lawful contract of her executive officers made within the scope of their duly constituted authority."

Urquhart conceded the State was not bound by the unauthorized acts of its agents, and, also, that the legislative act in question did not expressly provide for the payment of interest, but contended that "this authority may be expressed or implied" and that it was implied in that case. In rejecting this contention the Court said:

"The General Assembly has plenary powers to contract for and create interest-bearing indebtedness on the part of the State, except to issue interest-bearing treasury warrants or scrip. But the authority to bind the State to the payment of interest on her indebtedness must be plainly expressed and not implied."

The rule announced above is sound within the scope of the cases announcing it, but we do not think it is applicable in the situation here presented. Although the exact question under consideration is before this Court for the first time, it has been considered by other jurisdictions.

Assuming, for the present, that appellee's property taken by the Highway Commission was, on June 24, 1952, worth the amount of the judgment rendered that day in his favor, he will be deprived of the use and rents for nearly two years unless the State is obligated to pay him the value thereof. To allow the State to escape this lia-

bility would be contrary to our State Constitution. Art. 2, § 22, reads:

"§ 22. *Property Rights — Taking Without Just Compensation Prohibited.*—The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor."

Just compensation means full compensation. While the real loss to appellee might well be described as the denial of the use of his land for the time stated, yet the universally recognized rule for measuring this loss is by calculation of interest on the value of the land. This conclusion is supported by many authorities.

*Kimball Laundry Co.* v *United States,* 338 U. S. 1, 69 S. Ct. 1434, 93 L. Ed. 1765. Where the Government took over a laundry for war purposes on a rental basis, it was held liable for interest on past-due installments under Amendment No. 5 of the U. S. Constitution which provides that "private property shall [not] be taken for public use without just compensation."

*James D. Smyth, Exr.* v. *U. S.,* 302 U. S. 329, 58 S. Ct. 248, 82 L. Ed. 294. After recognizing the general rule contended for here by appellant the Court stated the apparent exception in eminent domain cases. It said:

"The allowance of interest in eminent domain cases is only an apparent exception, which has its origin in the Constitution."

*Jacobs, et al.* v. *U. S.,* 290 U. S. 13, 54 S. Ct. 26, 78 L. Ed. 142. Construing the language in the 5th Amendment to the U. S. Constitution, which is the same as used in our own Constitution, the Court said:

"The owner is not limited to the value of the property at the time of the taking; 'he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking.' Interest at a proper rate 'is a good measure by which to ascertain the amount so to be added'."

*Simms, et al.* v. *Dillon, Judge,* 119 W. Va. 284, 193 S. E. 331, 113 A. L. R. 787. The Court, in refusing to hold unconstitutional an act of the Legislature because it did not provide for the payment of interest on the value of land between the date of entry and date of payment, said:

"Under the authority of these cases, it is not necessary to so provide in the statute setting up the eminent domain procedure, but such right to interest is implied, and it will become the duty of the court entering the final award to provide for the payment of interest at the legal rate during the time between the taking and the final payment of the money due."

*Oklahoma City* v. *Wells, et al.,* 185 Okla. 369, 91 P. 2d 1077, 123 A. L. R. 662. The Court in a well-considered opinion construed the Oklahoma Constitution which reads the same as our own in this connection, and held that interest was payable from the date of entry. After reviewing many authorities it said:

"As we view the law, the general rule is that under constitutional provisions such as ours, where land is actually taken for public use by the U. S. Government, a state or any subdivision thereof, or by a corporation having the right to exercise the power of eminent domain, without payment of compensation as required by the Constitution, interest should be allowed from the time of the appropriation or entry on the property."

That interest is payable on the value of property taken under eminent domain proceedings from the date of entry is stated as the general rule in 18 *Am. Jur.,* § 272 at page 912, and in 29 *C. J. S.,* § 176 at page 1053.

There are other grounds urged by appellant for a reversal which, we think, are untenable and need not be discussed at length.

It is insisted we should assume that if the bill of exceptions was before us it would show that interest was included in the principal judgment. The answer is that appellant is responsible for the entire record not being

here, and in its absence we can examine only what is before us. In *Norton* v. *Hickingbottom*, 212 Ark. 581, 582, 206 S. W. 2d 777, the Court said:

"It is quite probable that the jury did just what appellants claim; but the appeal is here without a bill of exceptions and our consideration extends only to the face of the record."

Moreover, appellee has volunteered to bring forward in his brief the instructions of the lower court and they fail to disclose that interest was included in the jury's verdict.

It is next urged by appellant that the judgment of the Court does not conform to the verdict, in violation of *Ark. Stats.*, § 29-109. It is conceded by appellant that this statute has not been literally followed by this Court and that in some instances interest may be added by the Court to the verdict of the jury, as in *Rogers* v. *Atkinson*, 152 Ark. 167, 237 S. W. 679; *Norton* v. *Hickingbottom*, 212 Ark. 581, 206 S. W. 2d 777, and other cases. It is insisted, however, that interest is never so added in a suit for damages.

While this action was in the nature of a suit for damages, it actually was an action to determine the value of land taken by appellant from appellee. Whatever damage resulted to appellee was done when appellant entered on May 5, 1950. The only thing the jury did was to establish the value [or damage to] of appellee's land as of that date, and, that having been done, it required only a mathematical calculation to determine the amount of interest due appellee. In the case of *Rogers* v. *Atkinson, supra,* the Court approved this statement:

"Where the successful party to an action is legally entitled to interest, it is an incident of the verdict establishing his claim, and, in case the jury fail to award interest, the court in rendering judgment may, if the amount of interest is ascertainable by mathematical calculation, add such amount to the verdict."

To the same effect is the recent case of *Boone* v. *General Shoe Corporation*, 219 Ark. 340, 242 S. W. 2d 138.

Finally, we see no merit in appellant's contention that interest, if any, should run only from date of entry [May 5, 1950] to the date when appellant made its deposit in the registry of the Court. This, of course, would result in no interest at all since the deposit was made March 27, 1950. In all events the proper date from which interest should be computed in this instance is the date of entry, as was done by the trial court. The deposit of $175,000 made by appellant on March 27, 1950, was for the benefit of not only appellee but for many other defendants joined in the condemnation proceedings, and it is not to be confused with a definite tender by appellant for appellee's specific land. The rule in this connection is well established as stated in Note C., 96 *A. L. R.* at page 202:

"A majority of the cases seem to hold that a deposit of the compensation award does not amount to a true tender or stop the recovery of interest on the final award."

We do not here hold that under certain circumstances a tender made to a landowner in a condemnation proceeding would not bar the recovery of interest thereafter.

Affirmed.