STATE of Arkansas *v.* INDEPENDENCE COUNTY,
Blair Arnold and Tom Allen

92-1298                                        850 S.W.2d 842

Supreme Court of Arkansas
Opinion delivered April 5, 1993

*Winston Bryant*, Att'y Gen., by: *Kyle Wilson*, Asst. Att'y Gen., and *Patricia Van Ausdall*, Asst. Att'y Gen., for appellant.

*Tom Allen*, pro se.

*Blair Arnold*, pro se.

*Duncan & Rainwater*, by: *Michael R. Rainwater*, for appellee Independence County.

*W.W. Elrod* and *Jeff Rosenzweig*, for amicus curiae Arkansas Bar Ass'n and Arkansas Trial Laywers Ass'n.

STEELE HAYS, Justice. In the aftermath of *Arnold* v. *Kemp*, 306 Ark. 294, 813 S.W.2d 770 (1991), attorneys Blair Arnold and Tom Allen petitioned the Circuit Court of Independence County for fees and expenses incurred in the defense of Susan Jernigan. Arnold and Allen had been appointed over their objection to represent Mrs. Jernigan in connection with a capital felony murder charge involving the death of her husband. In the course of that representation Arnold and Allen declined to proceed further, maintaining that they could not render effective assistance because of the limitation on out-of-pocket expenses and fees mandated under Ark. Code Ann. § 16-92-108 (1987). They were found to be in contempt. They appealed to this court, challenging the constitutionality of § 16-92-108 and in a landmark decision this court struck down the cap on fees and expenses as applied in that case. *See Arnold* v. *Kemp, supra.*

On remand, the Independence Circuit Court conducted a hearing and determined that Arnold was entitled to $31,437.32 and Allen $42,143.67. The trial court ruled Independence County was primarily responsible for payment but the state was liable for reimbursement for all sums in excess of $7,798, as provided in Ark. Code Ann. § 16-91-109 (1987). The trial court rejected the argument of the state that it should have no liability to the county because of an exemption in Ark. Code Ann. § 14-20-102 (Supp. 1991). The state has appealed and Arnold and Allen have cross appealed. The Arkansas Bar Association and the Arkansas Trial Lawyers Association have filed a brief amici curiae in support of the cross appeal. For reasons to be discussed, we affirm the order on direct appeal as well as on cross appeal.

### Direct Appeal

The state's single point of error is that the trial court erred by interpreting Ark. Code Ann. § 14-20-102 (Supp. 1991) as having no effect upon the liability of the state for the payment of fees to attorneys to represent indigent defendants in criminal cases.

Section 14-20-102 authorizes any county to create a fund for

the defense of indigent persons and to levy fees and make appropriations as needed for that purpose. Because Independence County established an indigent defense fund, the state contends it is not responsible for payment of any of the fees and expenses allowed by the trial court in this case, relying on subdivision (c) of § 14-20-102, which reads:

> (c) The provisions of § 16-92-108 and other laws relating to the amount of attorney fees and costs that may be paid in the defense of indigents charged with criminal offenses and in the defense of persons against whom involuntary commitment proceedings are sought for insanity or alcoholism shall not be applicable in any county in which the quorum court establishes a fund under this section and levies additional costs or fees to finance such fund.

The circuit court, however, interpreted § 14-20-102(c) as previously allowing a county which had enacted an indigent defense fund to disregard the existing fee-cap and pay a public defender a larger fee, prompting the county to appoint a public defender, and presumably, encouraging attorneys to accept such positions. The state insists that interpretation is too narrow, that a reading of the full statute makes clear that regardless of whether a public defender has been established, an indigent defense fund may be used in any county to pay the fees of court appointed counsel.

We need not address the state's argument, other than to point out that the answer was provided in *State* v. *Post*, 311 Ark. 510, 845 S.W.2d 487 (1993), a plurality opinion delivered after the state's brief was filed in this case. In *Post*, Ark. Code Ann. § 16-92-108 (1987) was held to be invalid with the following commentary:

> This leaves us with no provisions requiring the county to pay defense attorney fees of counsel appointed to defend indigent defendants. . . . Payment of fees to attorneys representing indigents is a responsibility of the state which the legislature had delegated to the counties by statute. Since there is no statute delegating this duty to Independence County, the state is responsible for payment of

[defense counsel's] fees and expenses.

*Post* at 520-521.

■ While that holding emanated from a sharply divided court, it nonetheless resolves the issue now raised and requires that we affirm the trial court.

### Cross Appeal

By cross appeal Arnold and Allen contend that the amounts awarded for their services to Susan Jernigan were erroneous under the facts of this case and laws of this state. They urge that the trial court erred by considering a lawyer's obligation to provide pro bono services as a factor in setting the fees. The brief of the amici curiae advances the argument that the proper measure of compensation for attorneys ordered by the courts to represent indigent defendants is the fair market value of their services. The amici brief urges that "just compensation" means "full compensation." *Arkansas State Highway Commission* v. *Stupenti*, 222 Ark. 9, 257 S.W.2d 37 (1953).

The record reflects that in the representation of Mrs. Jernigan, Allen expended 850 hours and Arnold 616.25. Allen's annual gross receipts for the year 1991 were $63,000 less than the average for the three previous years and Arnold's $52,000 less than the average for the two previous years. Allen customarily charges an hourly fee ranging between $75 and $100 per hour. After hearing testimony from Allen and Arnold describing the impact of the Jernigan matter on their practice, the trial court heard testimony from several attorneys with a wide range of experience in criminal cases. William R. Wilson, Jr. testified he would not have taken the Jernigan case on an hourly rate, he would have charged a fee of $80,000. Bill W. Bristow testified that if he were taking the Jernigan case on a flat fee basis and the person had very little money he would want a $30,000 fee and $10,000 to $15,000 to hire experts and would bill more if the hours exceeded a certain amount. Phillip Farris testified he would not consider taking Mrs. Jernigan's case for less than $25,000 attorney's fee and $7,500 for experts, with another $10,000 if the case went to trial, explaining that he would charge a fee of $25,000 if the case were plea bargained and $35,000 if the case were tried. Roy Thomas testified concerning his experience in

several criminal cases, that he spent a minimum of 300 to 400 hours preparing for trial in a capital murder case in Stone County at a probable cost of $25,000 based on overhead and lost income. He estimated "$2,000 to $3,000 of time invested in them even if they don't go to trial."

Gary Vinson testified he would want a fee of $25,000, conservatively, to defend Mrs. Jernigan, which was low because of her lack of funds, plus $5,000 to $10,000 for experts. John Norman Harkey said $10,000 to $15,000 would be required for experts and investigators and to properly prepare the Jernigan case for trial would require 400 plus hours. He would charge a flat fee of $35,000 to defend the Jernigan case.

In making the allowances of $31,437.32 to Arnold and $42,143.67 to Allen, the trial court considered the following factors: the reputation of Messrs. Arnold and Allen in the community, their known abilities, the local fee rate of "roughly" $100 per hour, what the initial charge might be for representation in a similar case, that the amount awarded would not fully compensate them, that it would be difficult, if not impossible, to determine what part of the investment in time was attributable to the defense of Mrs. Jernigan and what part was attributable to bringing to a head the issue of attorney fees for indigents and pioneering the way for other lawyers in the state; that lawyers within a community do have a certain amount of responsibility to the community and their profession to provide pro bono services.

We regard all those factors, and others that will doubtless emerge with time, as pertinent and material constructs in the determination of an appropriate fee for court appointed counsel. Others that come to mind include whether the lawyer's efforts are essential and necessary to the defense. Time spent on theories that are unfounded in fact or law, or those which have been repeatedly rejected by appellate courts, are presumptively noncompensable, absent special circumstances. We recognize at the same time that our system abets claims of ineffective assistance against even the most conscientious practitioner so that counsel are constrained to develop a record with one eye on self defense and the other on client defense.

Appellees and amici point to language in the *Arnold* majority opinion that the time and services of an attorney are

property within Fifth Amendment protection, the taking of which is subject to just compensation. Certainly, the rationale of the majority opinion was clearly based on Due Process and Equal Protection foundations, but nothing in the opinion suggests that *Arnold* v. *Kemp* intended to substitute one extreme for another, that is, a statutory system that effectively confiscated a lawyer's time and talent for a token consideration in exchange for one in which lawyers are compensated at a level commensurate with the prevailing charges to private clients. Indeed, the majority opinion in *Arnold* makes that explicit:

> *In awarding fees to Messrs. Arnold and Allen for reasonably expended services, we do not mean that the trial court must simply award fees based on their customary hourly charges or fixed fees* for services in criminal cases of this nature. To the contrary, the trial court should determine fees that are considered "just." In *Chrisco* v. *Sun Indus., Inc.*, 304 Ark. 227, 800 S.W. 2d 717 (1990), we recognized various factors to be considered by a trial court in making its decision, on an award of attorneys' fees, including the experience and ability of the attorney, the time and labor required to perform the legal service properly, the novelty and difficulty of the issues involved, the fee customarily charged in the locality for similar legal services, the time limitations imposed upon the client's defense or by the circumstances, and the likelihood, if apparent to the court, that the acceptance of the particular employment will preclude other employment by the lawyer. [Our emphasis.]

*Arnold*, supra at 304-305.

■ The criteria mentioned in *Chrisco* v. *Sun Indus., Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990), are familiar components for fee setting which the *Arnold* majority labelled "instructive" and to be "*conservatively* applied." (Our emphasis.) In addition to those mentioned, *Chrisco* recognized that there is no fixed formula for computing attorney's fees and deferred to the superior perspective of the trial judge to weigh and apply those factors based on an intimate familiarity with the proceedings and with the quality of the services rendered, concluding that the discretion of the trial judge is not to be disturbed on appeal in the

absence of abuse. Of course, *Chrisco* is a civil case involving a breach of contract between private litigants. Since indigency was not involved, there was no occasion to include pro bono consideration.

Nor does the majority opinion in *Arnold* touch on pro bono concerns. However, a review of recent cases from other jurisdictions provides a ready answer. One of the leading cases in this area is *State ex rel. Stephan* v. *Smith*, 747 P.2d 816 (Kan. 1987), to which the *Arnold* majority attached primary significance. The Kansas Supreme Court found their statutory scheme for indigent compensation wanting in constitutionality, at the same time pointing out that the bar has an ethical obligation to provide legal services to the indigent accused which may justify paying attorneys a reduced fee for legal services to the poor, less than the fee an attorney might charge a financially solvent client for the same service, though not less than the lawyers average expenses statewide. The court remarked that requiring attorneys to donate a reasonable amount of time to indigent defense work bears a real and substantial relation to the legitimate government objective sought—protection of indigent defendant's Sixth Amendment right to counsel, that while the state has an obligation to fairly compensate lawyers for indigent defense, it need not be at the top rate an attorney might charge, but at a rate which is not confiscatory, considering overhead and expenses.

In *Jewell* v. *Maynard*, 383 S.E.2d 536 (W.Va. 1989), the West Virginia Supreme Court examined indigent defense, declining to follow Alaska [*See DeLisio* v. *Alaska Superior Court*, 740 P.2d 437 (Ala. 1987)] by requiring court appointed lawyers to be paid fair market rates, but finding it "constitutionally unacceptable to place the entire burden of court-appointed work on a few randomly selected members of the private bar." The West Virginia court chose, like Kansas, to strike a balance that is not confiscatory, considering overhead and expenses, "yet does not cause lawyers to start their meters running like taxi drivers . . . ." *Id.*, p. 546. In *Kovarik* v. *County of Banner*, 224 N.W.2d 761 (Neb. 1975) the Nebraska Supreme Court ruled that expenses and compensation in indigent cases must be "reasonable" and in *State ex rel. Wolff* v. *Ruddy*, 617 S.W.2d 64 (Mo. 1981), the Missouri Supreme Court opted for "fair compensation." Not even federal courts, with access to resources far

superior to anything available to most state courts, attempt to fully compensate lawyers for indigent representation. *See* 18 U.S.C.A. § 3006 A (Supp. 1991). The Supreme Court of New Hampshire said it well, if simply, in *State* v. *Robinson*, 465 A.2d 1214 (N.H. 1983):

> A fee for the defense of an indigent criminal defendant need not be equal to that which an attorney would expect to receive from a paying client, but should strike a balance between conflicting interests which include the ethical obligation of a lawyer to make legal representation available, and the increasing burden on the legal profession to provide counsel to indigents. [Citations omitted.]

465 A.2d at 1216.

Guided by these principles, we cannot say that the trial court's discretion was abused in this matter. It clearly gave careful reflection to the allowances and outlined the reasons. The amounts approximated $40 - $45 per hour and while that was roughly half of the amounts requested, it was not significantly counter to the bulk of the expert testimony. Assuming, we think correctly, that the amounts testified to by the expert witnesses contemplated a trial, the trial court could have considered a fee in the range of $30,000 or $35,000 on the one hand to $80,000 on the other. He in fact awarded a fee of around $70,000 for a case that was dismissed after Ms. Jernigan's custodial statement was suppressed, for which cross-appellants can rightfully claim full credit.

In sum, we are not persuaded that the allowances fixed by the trial court were either confiscatory or unreasonable and that being so, no abuse of discretion occurred. The order is affirmed.