BOARD of COMMISSIONERS of Little Rock Municipal
Water Works *v.* Grady N. ROLLINS and Jeane Rollins, His
Wife; Ewald J. Graf and Carol Graf, His Wife; H. Grady Miller,
Jr., and Mary Ann Miller, His Wife; and James Lee Eubanks

CA 96-49                                        945 S.W.2d 384

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered May 14, 1997

*Gill Law Firm, a professional association*, by: *John P. Gill* and *C. Tad Bohannon*, for appellant.

*Eichenbaum, Scott, Miller, Liles & Heister, P.A.*, by: *Christopher O. Parker*, for appellees.

SAM BIRD, Judge. As part of a project to preserve water quality in Lake Maumelle, the Board of Commissioners of Little Rock Municipal Water Works (LRMWW) filed an application for condemnation of 26.7 acres within the Lake Maumelle watershed. Lake Maumelle is used to supply drinking water for residents of Little Rock. The property was owned by Grady N. Rollins and Jeane Rollins, his wife; Ewald Graf and Carol Graf, his wife; H.

Grady Miller, Jr., and Mary Ann Miller, his wife; and James Lee Eubanks.

LRMWW filed its application for condemnation on July 23, 1993, alleging that it was proceeding pursuant to Ark. Code Ann. §§ 18-15-301 — 410 (1985). With its application, LRMWW tendered to the clerk of the court a check for $133,500, the amount that it estimated to be the fair market value of the property. However, the check was not accepted by the clerk and, upon inquiry by the appellees' attorney, the appellees were informed that there were no funds on deposit. Pursuant to an order of the court entered on January 25, 1994, the clerk accepted LRMWW's check into the court's registry, but neither the appellees nor their attorney were provided with a copy of the order or given notice that the deposit had been accepted. Therefore, the funds were not withdrawn by the appellees.

The appellees answered the condemnation application, alleging that LRMWW did not have the authority to condemn the property, that the Circuit Court of Pulaski County lacked jurisdiction, that the taking was unnecessary and unconstitutional, and that the property was valued at more than $133,500.

On December 1, 1994, the condemnation application went to trial. Both parties retained appraisers who testified as expert witnesses about the value of the land. Appellees' expert valued the land at $10,000 per acre. LRMWW's expert valued the land at $4,500 an acre. One of the owners valued the land at $12,000 an acre. The court refused to permit cross-examination of the appellees' expert witness about alleged mistakes made by her in prior appraisals of other tracts of land that were not used by the expert in determining the value of the subject land, and about which she had not testified on direct. The jury valued the property as of July 23, 1993, at $5,900 an acre and awarded the appellees $157,530.

On December 20, 1994, LRMWW deposited an additional $24,030, which was the difference between their initial deposit of $133,500, and the jury award of $157,530. The appellees filed a motion seeking interest on the amount of the jury's verdict, and the court awarded appellees interest at the rate of eight percent per

annum on $157,530 from July 23, 1993, to December 1, 1994, and on $24,030 from December 1, 1994, to December 20, 1994.

LRMWW argues three points for reversal. First, it alleges that the trial court erred in determining that July 23, 1993, was the date of taking of the property. Second, it asserts that the trial court erred in awarding appellees interest. Finally, it alleges that the trial court erred when it limited the appellant's cross-examination of the appellees'expert witness.

We find no error and affirm.

## I. Date of Taking and Determination of Interest

The first two points will be discussed together since they are related. Appellees contend that the date of taking of the land by LRMWW was the date the application for condemnation was filed, July 23, 1993, and that they are entitled to receive interest on the amount of the jury's verdict from that date until the judgment is paid. On the other hand, LRMWW contends that since it did not request an order of entry at the time it filed its application and since the appellees continued to have possession, use, and enjoyment of the land up until judgment was entered (by which date appellant had already paid the full amount of the jury's verdict into the registry of the court), it is not liable for the payment of any interest. In short, LRMWW argues that the date of taking is the date that final judgment was entered (June 13, 1995), whereas the appellees argue that the date of taking is the date the condemnation action was commenced (July 23, 1993).

It is well settled that in condemnation proceedings, interest shall be paid for the period between the date of taking and the final payment of the money due. *Arkansas State Highway Comm'n v. Stupenti*, 222 Ark. 9, 257 S.W.2d 37 (1953). Interest is designed to give a property owner the full value of the land as if the property owner was paid the full value at the time of taking. *Wilson v. City of Fayetteville*, 310 Ark. 154, 835 S.W.2d 837 (1992). Therefore, it is necessary to determine the date of taking in order to determine how much, if any, interest is due.

■ The determination of the date of taking is a fact issue and the trial court's finding should not be reversed unless it is clearly against the preponderance of the evidence. *Ozark Auto Transp., Inc. v. Starkey*, 327 Ark. 227, 937 S.W.2d 175 (1997); Ark. R. Civ. P. 52(a). The judge made a factual finding that July 23, 1993, was the date of taking and that the jury should value the property as of that date. In addition, in ruling on an objection by appellant, the judge barred any evidence as to sales that occurred after July 23, 1993.

■ ■ Under Arkansas law, the date of taking may be established by different methods, depending upon the circumstances of the case. It may be determined by the date entry is made upon the land, *Stupenti, supra*; it may coincide with the date of valuation of the property, *Arkansas State Highway Comm'n v. Choate*, 256 Ark. 45, 505 S.W.2d 731 (1974); it may be determined by the date of the Order of Entry, *Greig v. Crawford County*, 256 Ark. 202, 506 S.W.2d 523 (1974); or the date of taking might be determined to be the date the petition is filed, *United States v. Herring*, 750 F.2d 669 (8th Cir. 1984); *Newgrass v. Railway Co.*, 54 Ark. 140, 15 S.W. 188 (1891). The Arkansas Supreme Court has stated that when there is "any invasion of private property by lawful authority for a public use and the property is damaged thereby, there is a taking within the meaning of our law, and, where the damage is such as to deprive the owner of the beneficial use of his property, he may require that its value be paid to him." *Keith v. Drainage Dist. No. 7 of Poinsett County*, 183 Ark. 384, 392, 36 S.W.2d 59, 62 (1931).

The date of taking is frequently determined by the date of entry upon the land, and interest is awarded from that date. *Stupenti, supra*. This rule is most often applied when the Arkansas State Highway Commission enters upon the land to make improvements and the date of entry becomes the date of taking. *Stupenti, supra*; *Arkansas State Highway Comm'n v. Security Savings Ass'n*, 19 Ark. App. 133, 718 S.W.2d 456 (1986). The date of entry was determinative in these cases because the property owners were deprived of the land when the State entered upon the land to begin highway construction or road improvements. *Stupenti, supra*.

■ Appellant contends this rule should apply in the case at bar; therefore, they argue, appellees are not entitled to interest because they were not deprived of the possession or use of their land before the judgment was entered. Appellant argues that if the appellees are not deprived of the use of their land, then they are not entitled to interest. *Arkansas State Highway Comm'n v. Vick*, 284 Ark. 372, 682 S.W.2d 731 (1985); *Housing Authority of Little Rock v. Rochelle*, 249 Ark. 524, 459 S.W.2d 794 (1970). Appellant cites *Arkansas State Highway Comm'n v. Security Savings Ass'n*, *supra*, for the rule that interest is due to a landowner only if the landowner is deprived of the use of property before the judgment was entered.

However, the facts in this case distinguish it from these condemnation proceedings in which entry is made immediately upon the land. In the case at bar, the land was undeveloped and was taken not for the purpose of construction, but for the purpose of preserving the land in its natural state. LRMWW was not going to engage in construction, develop or change the land. While it may or may not be true that the appellees continued to have the use and enjoyment of the property after the filing of the application for condemnation, it is certainly true that from the time that the application was filed, the appellees' rights to use and enjoy the land were no greater than the rights of the public in general. Clearly, after appellant's application was filed, the appellees did not have the right to use the property in any manner that was inconsistent with the purposes for which it was being taken by LRMWW. It is equally clear that from and after the filing of its condemnation application, LRMWW became the beneficial owner of the property, with the only issue remaining unresolved being how much it would be required to pay. For all intents and purposes, appellees' beneficial use of the property was lost when appellant filed its application, notwithstanding that appellees still could, if they wanted to, look at and walk on the property.

The provisions of Ark. Code Ann. §§ 18-15-301 — 410 contemplate that the condemning authority will have the need to enter upon the land for the purposes of commencing construction or otherwise advancing its purpose for taking the land. However, when, as here, there is no need for the condemning authority to

enter upon the land to accomplish its objective (to preserve the land for the protection of the public water supply), that purpose is accomplished when the application for condemnation is filed.

If the land is valued as of July 23, 1993, but the owners are stripped of the privileges of ownership and deprived of the purchase price, without payment of interest, for almost two years, then the owners would receive less than full value for their land, and less than just compensation within the meaning of Ark. Const. art. 2, § 22. Therefore, the date-of-entry standard is inapplicable in this case, and the issue becomes when is the date of taking of a piece of property that will not be changed from its natural state and upon which entry will not be made. We find that in this case, even though no physical entry was made upon the land, the property was appropriated for public use on the date the condemnation application was filed and the date the valuation of the property was made.

Our holding is consistent with the holding of the Arkansas Supreme Court in *Newgrass, supra,* where the court recognized that many ways exist for determining the date of taking and that states have adopted various rules. In *Newgrass,* the court adopted the rule that the date of taking is determined from the date the petition was filed and not from the date of entry. When adopting this rule, the court stated that it "had the advantage of fixing a certain and definite time with reference to which the estimate must be made. Besides the corporation has the right to acquire the land; when it filed its petition, it declares its purpose to appropriate it and to render just compensation to the owner." *Id.* at 144, 15 S.W. at 189.

In the case at bar, even though no actual entry was made upon the land, the date of taking is determined from the date the petition was filed, which is the same date that was used to determine the value of the land. The appellees were deprived of the beneficial use of their land from the date the petition was filed and the date the land was valued, and they are entitled to interest from that date. The judge's factual finding that July 23, 1993, was the date of taking is not clearly erroneous.

There is another reason we believe that the trial court was correct in awarding interest in this case. The application for condemnation was filed on July 23, 1993, and a check for the estimated value of the property was tendered with the filing. However, the check was not accepted until January 25, 1994, more than six months after the petition was filed, but the owners were not informed of the deposit nor provided with a copy of the court's order directing the clerk to accept the deposit. The appellant cites *Karam v. Halk*, 260 Ark. 36, 537 S.W.2d 797 (1976), for the proposition that the appellees had an affirmative duty to inquire about the pleadings and orders in the case, and argues that appellees should have made more diligent inquiries of the clerk as to whether the funds had been deposited. We do not agree that *Karam* is applicable here.

In *Karam*, following a bench trial the defendant was not provided with a copy of a judgment that had been entered against him, and he did not become aware of the entry of judgment until after the time for appeal had expired. He appealed from an order of the trial court refusing to set the judgment aside. The supreme court said that where the defendant had been provided with a copy of the court's findings and where the defendant thereafter made no inquiries about the status of the entry of judgment on those findings for a period of eight months, the defendant was in no position to contend that he had been the victim of an unavoidable casualty such as to require the trial court to set aside the judgment. *Karam, supra*.

The situation in *Karam* is clearly distinguishable from the case at bar. Here, appellees' counsel did inquire of the clerk shortly after the application was filed as to whether any funds had been deposited, and he was informed that none had been. We do not believe that it was the obligation of the appellees to inquire daily at the clerk's office whether appellant had deposited the funds as it alleged in its application that it had done. To the contrary, Ark. Code Ann. § 18-15-409(a)(1987) requires that, after the funds are deposited in the registry of the court, "[t]he court shall thereupon immediately enter an order giving the municipality possession of the property . . ." and that such order "shall be immediately served upon any person of adult age found residing

upon the premises . . . ." We think that it is significant that LRMWW purported to be proceeding under §§ 18-15-401 — 410 and deposited funds pursuant to § 18-15-409, but made no attempt to notify the appellees that its check had been accepted by the clerk for deposit into the court's registry on January 25, 1994. We think that this is a sufficient reason alone to award appellees interest.

## II. The Limitation on Cross-Examination

■ The appellant argues that the court's limitations on the appellant's cross-examination of the appellees' witness amounted to an abuse of discretion. The general rule is that a judge has wide latitude in imposing reasonable restrictions on cross-examination based upon concerns about confusion of the issues or interrogation that is only marginally relevant. *Larimore v. State*, 317 Ark. 111, 877 S.W.2d 570 (1994). Arkansas Rule of Evidence 611 states that the judge may limit the cross-examination to issues presented on direct examination or issues of credibility. We have held that in an eminent domain proceeding, the latitude allowed the parties in bringing out collateral and cumulative facts relating to value estimates is left largely to the discretion of the trial judge. *Arkansas State Highway Comm'n v. Julian Martin, Inc.*, 16 Ark. App. 288, 701 S.W.2d 389 (1985). This court will not reverse unless it finds a clear abuse of discretion by the trial judge in limiting the cross-examination of a witness. *Arkansas State Highway Comm'n v. Dean*, 247 Ark. 717, 447 S.W.2d 334 (1969).

Rhonda Weaver, the appellees' expert witness, had prepared two appraisals relating to the land in this case; the first one was prepared in March 1993, before this condemnation application was filed, and the second one was prepared especially for this case and completed only the day before the trial. The March 1993 report covered not only the land in this case but also a smaller tract of land that was the subject of another condemnation case. The March appraisal contained references to sales of other land that Weaver had not considered when she determined the value of the land involved in this case. However, the appraisal report she prepared the day before the trial, that covered only the 26.7 acres involved in this case, contained references to only those land sales

that she had considered when appraising the 26.7 acres. In her March appraisal, Weaver concluded that the land in this case was valued at $8,000 per acre.

At the trial, Weaver testified on direct examination about land sales referred to in her second report, and she stated that those sales formed the basis for her appraisal of the value of the land in this case, which she opined to be $10,000 per acre. LRMWW's counsel then sought to question Weaver on cross-examination about sales she referred to in her March 1993 appraisal about which she had not testified on direct examination and upon which she had not relied in reaching her opinion of the value of the land in this case. Appellees objected, contending that such questions were beyond the scope of direct examination, and the court sustained the objection.

The appellant argues that the judge abused his discretion by limiting the scope of direct examination and making the scope overly restrictive. The appellant states it wanted to introduce the March report to try to discredit the witness. The appellant contends that "counsel for LRMWW was not permitted to cross-examine appellees' expert witness about her first appraisal of the Property (prepared several months before trial and which had a lower value) or testimony by her in other trials." We do not agree. Appellant's contention that it was not permitted to cross-examine Weaver about the discrepancies between her first and second appraisal reports is not borne out by the record. To the contrary, the court indicated that it would allow appellant's counsel to ask Weaver if a previous report existed and whether, in the previous report, she arrived at a lower value. The judge said:

> Well, I kind of agree with you could ask her about, "Didn't you, at one point in time, arrive at an $8,000.00 per acre figure and you changed it to ten thousand?" But I have some problem saying, "And let's talk about these comparables" when they're not even in the record and she didn't consider them in this last appraisal.

The judge would not permit the testimony about the properties that she didn't testify to at the trial and didn't use in forming her opinion. Again, the judge ruled:

> You want to go in and say, well, well, let's talk about properties that you've furnished us that you didn't even use in this trial today and talk about your accuracy in those which didn't even form a basis as part of her opinion here. I don't have any doubt you could say, "Well, didn't you, at one time, arrive with a figure of $5,000 per acre or $3,000 per acre just three months prior to this date?"

The cross-examination that the appellant's counsel was not permitted to pursue related only to sales referred to in Weaver's first report, which she did not use in determining the land's value and which were not included among the sales she relied upon in arriving at her estimate of the fair market value of the land as set forth in her second appraisal. The judge found these matters to be collateral; therefore, he did not allow any cross-examination on them. The following dialogue occurred:

> THE COURT: But, boy, we could be here all day if we just started going off and finding other properties that she's appraised and starting to see if they're accurate and was there a house on that property or wasn't there a house on that property. It's collateral to this case . . . .
> MR. GILL (attorney for the appellant): Judge, it goes to credibility and the credibility is all that's at issue here. The jury's got to believe one of these appraisers or the other one, and that's all. And I'm —
> THE COURT: I'm not going to do it, John.

The appellant relies on three cases in arguing for reversal. First, the appellant relies upon *Dean, supra*. In *Dean*, the Arkansas Supreme Court reversed a lower court's decision because the trial judge improperly limited the scope of cross-examination by the appellant of an expert witness about real-estate sales considered by the expert that might have been comparable to the land that was being condemned. In *Dean*, the expert considered some 250 parcels of the land in arriving at a fair price. In trying to expedite the case, the judge limited the cross-examination to two to four of the tracts considered by the expert. *Id*. at 719-20, 447 S.W.2d at 336. The court reversed and held:

> The proper cross-examination of a witness is the most effective
> attack that can be made upon his credibility and the best means of
> diminishing the weight which might be accorded his testimony.
> A wide latitude is permitted in cross-examination as to questions
> tending to impeach the credibility of a witness or in eliciting
> matter for consideration of the jury in weighing the testimony.

*Id.* at 720-21, 447 S.W.2d at 336. However, in this case, the court
was referring to allowing the appellant to cross-examine the wit-
ness on properties that the expert *had used* in determining what
price was appropriate. The court was not referring to properties
that were *not used* by the expert. The court quoted from *Coca-
Cola v. Moore*, 246 F. 942 (8th Cir. 1917), which held that "[t]he
testing of the probative weight of an expert's estimate of value
necessarily requires a liberal latitude of inquiry into the factors and
considerations *upon which each was based.*" (Emphasis added).
*Dean*, 247 Ark. at 721, 447 S.W.2d at 337. Furthermore, the
court would not have let the appellant cross-examine the witness
on each of the 250 sales used by the expert in determining a price.

The appellant also relies upon *Arkansas State Highway
Comm'n v. Lewis*, 258 Ark. 836, 529 S.W.2d 142 (1975), which
held that the appellant should have been allowed to cross-examine
an expert witness about admissions that his earlier testimony had
proved to be wrong in a number of instances because "his credibil-
ity might well have been seriously impaired." *Id.* at 838, 529
S.W.2d at 143. However, in the case at bar, the appellant was
allowed to cross-examine the witness as to earlier reports in which
she came to a lower price. Appellant's counsel was not prohibited
from questioning her about her earlier conclusion that the land
had a different value, but was prohibited from asking about sales
referred to in her first report that were not used in her determina-
tion of fair market value nor testified about by her on direct
examination.

In the third case relied upon by appellant, *Arkansas State
Highway Comm'n v. Pulaski Investment Co.*, 265 Ark. 584, 580
S.W.2d 679 (1979), the court held that an appellant should have
been allowed to cross-examine a witness because "[H]is knowl-
edge or lack of knowledge and his record on accuracy regarding
the value of the property would go to the credibility to be given

his testimony as an expert witness." *Id.* at 587, 580 S.W.2d at 681. Again, the appellant in the case at bar was allowed to question Weaver about differing prices, but not the details of an earlier report that was not in evidence or used by the expert in determining her estimate of the land's fair market value. In the case at bar, the judge made it clear that he was not going to allow the appellant's counsel to delve into details about property sales referred to in an earlier report, which were not entered into evidence, were not testified about on direct, and were not used by the expert in forming her opinion. The trial court allowed appellant to question Weaver about her first appraisal and the discrepancies between it and her valuation of the land in her second appraisal. We cannot say that the judge's refusal was an abuse of discretion.

In summary, the date of taking is July 23, 1993, the date of the filing of the petition for condemnation and the date the property was evaluated. Therefore, the appellees are entitled to interest from that date. Furthermore, the court did not err in not allowing the appellant to impeach the appellees' expert witness on collateral issues that were not testified to on direct nor used by the expert in determining the value of the condemned land.

Affirmed.

JENNINGS and ROAF, JJ., agree.

ROBBINS, C.J., NEAL and GRIFFEN, JJ., dissent.

JOHN B. ROBBINS, Chief Judge, dissenting. I agree with Judge Griffen's dissent on the issue of the trial court's limitations on cross-examination of appellee's witnesses and for that reason would reverse the decision of the trial court. However, contrary to Judge Griffen's position on the interest issue, I would also reverse the trial court's award of interest to appellees for a period of time prior to when appellees were dispossessed from the property.

I agree with the premise stated by the majority that interest should be paid to a property owner by the condemning authority between the date of taking and the date that payment of damages is made to the property owner. I suppose my disagreement is with the majority's view of when the "taking" occurred. I am of the

opinion that a taking occurs when a condemnor enters onto the land or has the right to so enter. This event should correspond to that date when the property owner loses his right to use and possess the property. The majority cites *Arkansas State Highway Comm'n v. Choate*, 256 Ark. 45, 505 S.W.2d 731 (1974), to show that the date of taking may coincide with the date of valuation of the property. The property in *Choate* was condemned under former Ark. Stat. Ann. § 76-533 et. seq. (now Ark. Code Ann. § 27-67-311 et. seq.), which provides that upon filing the declaration of taking and depositing the estimated compensation, the State immediately has not only the right of entry and possession but fee simple title as well. The State followed this procedure. Consequently, the taking and the valuation date of the property were one and the same, i.e., the date of filing.

The majority cites *United States v. Herring*, 750 F.2d 669 (8th Cir. 1984), and *Newgrass v. Railway*, 54 Ark. 140, 15 S.W. 188 (1891), as holding that the date of taking might be determined to be the date the petition is filed. In *Herring* the United States condemned property under the Declaration of Taking Act that vested title in the government immediately upon the filing of a declaration of taking provided that a deposit is made of estimated compensation. This the government did. Consequently, the taking did occur when the action was filed, but at the same time the government also acquired the right to possession of the property. In *Newgrass* the condemning railroad company had entered into possession of the condemned property prior to the date the condemnation action was filed. The supreme court held that, for purposes of valuing the condemned property under these circumstances, the measure of damages would be the value of the property as of the date the action was filed. As to interest on the damages assessed, the supreme court said, "*As the corporation has been in the enjoyment of the land*, the damages assessed will bear interest from the date of filing the petition." 54 Ark. at 148. (Emphasis added.)

In the case now before our court, there was no order of immediate possession entered by the trial court giving LRMWW the right to possession of the subject property as contemplated in Ark. Code Ann. § 18-15-409(a)(3). Appellees were not entitled

to an accrual of interest on their damages award until they were deprived of both the use of the land and the money representing its value. *See Wilson v. City of Fayetteville*, 310 Ark. 154, 162, 835 S.W.2d 837 (1992); *Arkansas State Highway Comm'n v. Vick*, 284 Ark. 372, 682 S.W.2d 731 (1985). Appellees were simply not deprived of the use of their land, nor was LRMWW entitled to enter onto this land, prior to conclusion of the trial on December 1, 1994.

Without an order of possession, LRMWW, as the condemning authority, did not "take" the subject property and become entitled to enter and possess it until trial and damages were assessed. Until trial, appellees continued to be the sole owners and had the exclusive right to possess and exercise all rights of ownership to the property. While the majority opines that after LRMWW filed their condemnation action the appellees' rights to use and enjoy the land were no greater than the rights of the public in general, no authority for such opinion is stated, and I submit that there is none. Appellees could farm the property or place the property to any other use that applicable zoning regulations would permit after the condemnation action was filed, just as they could before it was filed. The general public did not have any such similar right to use and possess the property.

I find no reason in logic or the law to give a property owner the windfall of having the use and enjoyment of his property and yet an interest accrual on the value of the property for the same period of time. I dissent from the trial court's award of interest prior to the trial.

WENDELL L. GRIFFEN, Judge, dissenting.

> The purpose of cross-examination . . . is not limited to bringing out a falsehood, since it is also a leading and searching inquiry of the witness for further disclosure touching the particular matters detailed by him in his direct examination, and it serves to sift, modify, or explain what has been said, in order to develop *new or old facts in a view favorable to the cross-examiner. The object of cross-examination, therefore, is to weaken or disprove the case of one's adversary, and break down his testimony in chief, test the recollection, veracity, accuracy, honesty, and bias or prejudice of the witness, his source of infor-*

> mation, his motives, interest, and memory, and exhibit the improbabilities of his testimony.
> —*Arkansas State Highway Comm'n v. Dean*, 247 Ark. 717, 447 S.W.2d 334 (1969) (emphasis added).

Although I agree that the trial court did not err in finding July 23, 1993, the date for taking, and that no error occurred in its decision awarding interest to the property owner appellees, I believe that the trial court improperly limited the scope of cross-examination of the appellees' expert witness. Thus, I would reverse and remand for new trial on that ground.

The issue arose when appellant's counsel was cross-examining the real estate appraiser retained by appellees. The expert witness, Rhonna Weaver, had testified during direct examination that the property involved in the condemnation case was worth $10,000 per acre, based on the sales of property that she considered comparable, as supported by a written appraisal report delivered to appellant's counsel the evening before trial. On cross-examination, counsel for appellant attempted to ask Weaver about another appraisal that she had prepared several months before trial. That appraisal was for appellees and included the subject property along with another parcel, contained comparisons of thirteen (13) different sales that were used to determine the value of both tracts, and assigned an appraised value to the property involved in the condemnation action of $8,000 per acre, $2,000 less than Weaver assigned in the later report and testified about on direct examination. Appellant's counsel attempted to cross-examine Weaver based on the thirteen (13) sales in the March 1993 appraisal report for the purpose of showing factual errors that she allegedly made in describing the comparison sales. After counsel for appellees objected, the trial judge sustained the objection and limited the scope of cross-examination to the comparison sales that Weaver listed in the appraisal report on which she relied during her direct examination. The trial court deemed the earlier appraisal report to be collateral, despite the fact that appellant's counsel did not attempt to introduce it into evidence.

I believe that appellant was entitled to attack Weaver's credibility by pointing to the first appraisal report and showing inaccu-

racies in it, despite the fact that the first appraisal report had not been introduced into evidence by appellees or mentioned by Weaver during her direct testimony. I see no error whatsoever in allowing an expert to be cross-examined about a different opinion that she has rendered covering the same property, especially in view of the fact that the sole issue involved in her testimony and the most important issue in this condemnation action was the value of the property that was taken.

In proffering the nature of the testimony that he would have attempted to elicit during the cross-examination, counsel for appellant indicated that the March 1993 appraisal report was inaccurate in several respects concerning the thirteen comparison sales on which it was based and about which Weaver had testified as recently as two weeks before the trial in this case. For instance, Weaver had testified that a comparison property had a view when it did not. She had testified that no structures were on another comparison property and that the sale of that property was an arms-length transaction; appellant's counsel proffered that, to the contrary, structures were located on that comparison property and that it was not an arms-length transaction because the buyer and seller were the same people. Concerning two other comparison properties listed in her March 1993 appraisal (sales 4 and 8) that included the property in this suit as well as other property, Weaver had testified two weeks before the December 1, 1994, trial in this action that the properties had been financed in a conventional arrangement; instead, counsel for appellant proffered that the sales had been seller-financed. In another instance, Weaver had testified that no structures were on a comparison property whose sale value had been used to reach her $8,000 per acre appraised value; counsel for appellant proffered that in fact, there was a barn and several other structures on the property, including a mobile home.

In yet another comparison sale included in the March 1993 appraisal, Weaver had testified two weeks before this trial that a parcel was located in Pulaski County, that the only structure on it was a house in poor condition, and that the property was not in agricultural production. However, counsel for appellant proffered that most of the property lay in Saline County. Instead of having a single house in poor condition, the property was the site of a

brick home, a barn, and silo. Instead of not being in agricultural production as Weaver had indicated in the March 1993 appraisal, the property produced blueberries, fruits, vegetables, pumpkins, and other crops. In another comparison property included in the March 1993 appraisal, Weaver had indicated that the sale was a cash transaction (counsel for appellant proffered that the sale was seller-financed), and Weaver had indicated that there was no water on the comparison parcel (appellant's counsel proffered that there was water service to the property).

The attempt to cross-examine Weaver based on the March 1993 appraisal report that contained a lower appraised value for the property involved in the condemnation proceeding did not involve a collateral question or collateral evidence. In the first place, the 1993 appraisal report was not offered into evidence in the 1994 condemnation trial. As such, it did not constitute hearsay evidence (an out of court statement rendered by the declarant offered to prove the truth of the matter asserted). Furthermore, appellant was entitled to attack Weaver's credibility and show that the March 1993 appraisal report was based on numerous inaccuracies. The jury should have been given this information so that it could properly evaluate Weaver's trustworthiness as a witness. Credibility and bias are never collateral matters, and the effort to cross-examine Weaver about her propensity to make errors in another appraisal that involved the same property was not an attempt to inject a collateral issue or matter into the trial. Even had appellant's counsel offered the appraisal report into evidence, it would not have been hearsay because it was a prior inconsistent statement about the value of the property involved in this lawsuit.

I would reverse and remand for new trial. As the supreme court stated in *Arkansas State Highway Comm'n v. Dean*, 247 Ark. 717, 447 S.W.2d 334 (1969), proper cross-examination of a witness is the most effective attack that can be made upon her credibility and the best means of diminishing the weight that may be accorded her testimony. A wide latitude is permitted on cross-examination as to questions tending to impeach the credibility of a witness or in eliciting matter for the jury to consider in weighing the testimony. Where testimony of a witness is opinion evidence, it is essential that opportunity for thorough cross-examination be accorded, and courts should be especially liberal in allowing full and complete examination of an expert witness. *Id.* at 720-21,

447 S.W.2d 336. In this case, Weaver's opinion testimony about her appraised value of the property deserved close scrutiny by the trier of fact because the lawsuit was primarily a dispute over how much the condemned property was worth. Weaver's reliability for accuracy, trustworthiness, and reliability concerning the way that she calculated value was definitely a valid issue for the jury to evaluate. The fact that she had prepared an appraisal report that included the property in this action in March 1993 and testified as recently as two weeks before the December 1, 1994, jury trial in this case that the property was worth $2,000 less than she contended that it was in the report that she testified about during direct examination were highly relevant issues bearing on Weaver's credibility. Indeed, one could surmise that Weaver's cross-examination two weeks before this trial, based upon the asserted inaccuracies and errors of the March 1993 appraisal, made appellees want to keep the alleged deficiencies in her appraisal protocol from being known by the jury, even if it had not caused her to prepare the appraisal that was delivered to appellant's attorney the night before trial. However, the jury deserved the chance to know that Weaver's $8,000 appraisal was not the only value that she had assigned, and that her $10,000 appraisal had serious defects. In fact, it is hard to conceive how the jury would not want to know that information as it weighed the conflicting appraisal opinions and evaluated Weaver's credibility.

Appellant should have been allowed to cross-examine Weaver about the one thing that mattered most — her capacity for accuracy in assessing the factors that bore on appraising the real estate that was condemned. The trial judge's ruling denied that opportunity to appellant, and meant that the jury was denied the opportunity to consider Weaver's opinion about value in light of her alleged propensity for misstatement and inaccuracy on the most material issue that her testimony involved. To that extent, the trial court denied the jury a full evaluation of Weaver's credibility and abused its discretion.

NEAL, J., joins in this dissent.